JAMES C. LEONARD *vs.* GEORGE W. WOOLFORD.

*(Contested Elections—Sufficiency of Petition Alleging Improper Return by Canvassing Board—Recount of Disputed Ballots—Jurisdiction of Court—Ballots Improperly Marked—Appeal—Agreement of Counsel—Copies of Ballots in Record.*

A petition contesting the election of the defendant to an office for which the petitioner and the defendant were candidates, the latter having been returned as elected by the canvassing board, set forth : (1) that a number of ballots illegally marked with the cross outside of the space provided for the voter's mark were wrongfully counted for the defendant ; (2) that a number of other ballots were also wrongfully counted for the defendant because the voters had placed thereon other marks than the cross-mark provided by law ; (3) that ballots properly marked for the petitioner were rejected ; (4) that these errors occurred in every election district in the county and were sufficient in number to change the result of the election, and that a recount of the ballots was necessary. *Held*, upon demurrer, that the averments of the petition are sufficiently definite to put in issue the accuracy of the return of the canvassing board.

The Act of 1896, ch. 202, sec. 71 (Code, supplement, Art. 33), provides⁻that after an election the ballot-boxes shall be delivered to the Clerks of the Circuit Courts of the counties, &c., who. shall keep them for six months "unless previously notified to produce the same to be used in evidence in some contested election or judicial or legis-lative investigation ;" and sec. 133 provides for the production of the ballots about;which testimony is to be taken. Secs. 121 and 133 authorize the Judges of the Courts to adopt modes of proceeding in contested election cases and provide for an appeal to the Court of Appeals. In this case the petition alleged that certain ballots illegally marked had been wrongfully counted for the defendant, who was returned as elected by the board of canvassers, and that other ballots properly marked for the petitioner had been wrongfully rejected ; that these errors occurred in every precinct in the county and that the number of. such ballots illegally counted and illegally rejected were sufficient to change the result and to show that the petitioner was elected. The trial Court passed an order directing a recount of the ballots and a separation of those to which either party should except. *Held,*

1st. That upon such a petition contesting the validity of the election return, it is competent for the Court to correct the return from an examination of the ballots themselves, when they have been kept as re-quired by the statute. · ·

2nd. That where the error is alleged to be in the illegal or defective marking of the ballot where it has been counted, or in its rejection where it is alleged to have been in all respects properly marked, it would be necessary to examine every ballot in order to determine how many were illegally or improperly counted or rejected.

3rd. That the order passed in this case, although literally one for a re-count of all the ballots, was only designed to permit the examination of the ballots as evidence to ascertain which were illegally counted or rejected ; that so to order was within the. power of the Court, and the tabulated statement filed by the Court with its decis-ion shows that the Court only counted the disputed ballots and added to the score of each candidate such of the disputed ballots for each as the Court determined proper to be counted.

Sec. 122 of the Act of 1896, ch. 202, which gives a right of appeal from an order of Court in a contested election case, directs that "the testimony taken in such cases shall be sent to the Court of Appeals as part of the record." In this case, after the decision of the Court below, an agreement of counsel was entered into which provided that the Court of Appeals should determine the case in the. manner therein agreed on. The agreement set forth a condensation of the testimony and stipulated that the original ballots in dispute and set aside by the parties should be produced before the Court of Appeals. *Held,* .

1st. That this Court will not examine the original ballots so produced, since there is no provision of law authorizing them to be brought into this Court, and since the ballots so produced are not authenticated.

2nd. That the agreement of counsel as to the testimony, made after the trial, will not be accepted by this Court as a substitute for the testimony upon which the trial Court decided the case.

3rd. That copies of the disputed ballots should have been incorporated in the record with the rulings of the Court thereon, and that since neither the original ballots nor any copies of any ballots are before this Court, there is no question properly raised as to whether any ballot was or was not legally marked and counted.

Appeal from an order of the Circuit Court for Dochester County (Lloyd, J.), which granted the prayer of the petitioner and provided that "a recount of all the ballots cast at the general election referred to is hereby ordered, and the following shall be the mode of procedure, to wit: David Straughn, Esq., Justice of the Peace, conducting the examination in this cause, will appoint two ballot clerks, one a Republican and one a Democrat in political sentiment (whose compensation shall be fixed by counsel), to tally and count said ballots in the presence of counsel for both parties to this contest, and swear them to the faithful discharge of their duties. When the Clerk of this Court, in pursuance of the last preceding orders of this Court, produces before the said justice the respective ballot-boxes and ballots as called for, all of said ballots shall be recounted in this manner, viz. : the respective counsel will first examine the ballots one by one, and if no objection is made to any ballot it shall be considered a legal ballot and be recorded on tally-sheets, kept for that purpose by the said ballot clerk, as cast and counted for the contestant or contestee, as the voter's mark shall disclose his preference. If any ballot shall be excepted to by counsel for either party it shall be at once set aside for the inspection of the Court at the hearing of the cause, and shall be tallied and counted by said ballot clerks for the contestant or contestee as the voter's mark shall disclose his preference, but in a separate

column on their tally-sheets from said columns of such
alleged ballots, and to be designated as challenged ballots.
All the ballots found in all the ballot-boxes shall be so tallied
and counted, including the ballots rejected by the judges of
election, and the committee on elections of the House of
Delegates ; only all ballots objected to shall be kept sepa-
rate and distinct from the unchallenged ballots, and made
into two bundles as to each ballot-box, and plainly marked
on their wrappers " Ballots objected to by contestant, or
contestee," as the case may be.   And all ballots found in
said boxes which do not appear to have been cast or counted
for either party to this cause, shall likewise be tallied and
counted in a separate column properly designated, and then
placed with the such alleged ballots.   And at the close of
the whole examination said tally-sheets shall be returned to
this Court by said justice, together with the other records
and exhibits in the cause.   All ballots as soon as tallied
and counted as aforesaid, and any examination of witnesses
as to them made by counsel is over, shall be at once re-
turned to the custody of the Clerk of this Court."

The cause was argued before FOWLER, BOYD, PEARCE,
SCHMUCKER and JONES, JJ.

*Phillips L. Goldsborough* and *Thomas W. Simmons* (with
whom was *Robert P. Graham* on the brief), for the appel-
lant.

*Alonzo L. Miles* and *W. Laird Henry* (with whom were
*Sewell T. Milbourne* and *Clement Sulivane* on the brief), for
the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from the Circuit Court for Dorchester
County in a contested election case, involving the title to
the office of County Commissioner for that county.   At the
last general election there held, November 7th, 1899, James
C. Leonard and George W. Woolford, both citizens of said

county, eligible to said office, were opposing candidates therefor, and their names were printed as such upon the official ballots used at said election. The board of canvassers, after casting up the votes given at said election for county commissioner, according to the returns from the several election districts, duly certified to the Clerk of the Circuit Court for the county, the number of votes cast for each candidate, and determined and declared that James C. Leonard was duly elected County Commissioner for Dorchester County for the term of six years. Woolford, on November 25th following, filed a petition contesting the election of Leonard, on the ground of errors and mistakes in counting the ballots, and asked a recount of all the ballots cast at the election. An amended, and a second amended petition was subsequently filed, upon which latter, in connection with the supplemental petition hereinafter mentioned, the case was heard. A demurrer was filed to the second amended petition, which was overruled with leave to answer, and answer was filed accordingly. Thereupon the Court passed an order prescribing rules for procedure in the case, and the parties began taking testimony thereunder. This proceeding was interrupted by an order from the House of Delegates, of Maryland, requiring the ballots cast at that election to be sent to Annapolis, to be counted by the elections committee in the contested election case of *Pattison* v. *Andrews*, for a seat in that body, and upon the return of the ballots from the elections committee, Woolford filed a supplemental petition alleging that the ballots which had been rejected by the judges of election in the original count, were, in the count by the elections committee, so mingled and confused with the ballots counted by the election judges, as to render absolutely necessary a recount of all the ballots cast at said election, in order to determine whether the contestant or the contestee had been duly elected; and on the same day the Court passed an order granting the prayer of the petition and prescribing rules for conducting the recount. In the

previous order the Court had refused to direct a recount of all the ballots at that stage of the case, but had reserved the right to pass such order at a later day if proper ground should be shown therefor. A demurrer was filed to the supplemental petition, which was overruled the same day, the Court stating the proper motion would have been to rescind the order for a recount, but granted leave to file the demurrer, to be regarded as filed before order passed, and to present the question at final hearing. The contestee thereupon filed a motion to quash the order directing a recount of all the ballots, on the ground that in passing it the Court exceeded its jurisdiction, and this motion was overruled. A lengthy amended answer was then filed to the second amended petition; the taking of testimony was resumed, and when completed was returned with the papers and documents to the Court as required by its order, and on April 7th, the Court filed a tabular statement and decision showing the result of the contest as determined by it to be the election of the contestant by a plurality of 18 votes, and on the same day passed an order declaring George W. Woolford, the contestant, to be duly elected commissioner, and directing and requiring James C. Leonard, the contestee, to pay the costs of the contestant in the cause. From that order this appeal was taken two days thereafter.

The second amended petition sets out the qualifications, candidacy of the contestant and the contestee for the office of county commissioner at the election of November, 1899; that the returns from that election, as certified by the canvassing board, showed that the contestant had received 3,168 votes for said office, and the contestee 3,203 votes for the same office, or a plurality of 35 votes over the contestant, and that the contestee was accordingly certified as elected over the contestant. The petition further alleged that notwithstanding this certificate and return, the contestant had received a plurality of all lawful ballots cast at said election, and was duly elected over all competitors, and then pro-

ceeded to specify irregularities, errors and wrongful acts of the judges of election in counting said ballots which caused the result certified.

These specifications were as follows in substance:

1st. That a number of ballots were wrongfully counted for the contestee, because improperly and illegally marked by the voters with a cross-mark outside of the space provided for said mark at the right of the Republican emblem, and without a cross-mark in any space provided therefor on the ballots.

2nd. That a number of other ballots were wrongfully counted for the contestee, because the voters had placed in the space provided at the right of the Republican emblem, certain marks, other than the cross-marks prescribed by law, without making a cross-mark in any of the spaces provided in said ballots for such mark.

3rd. That certain other ballots marked in every respect according to law, and cast for contestant, were wrongfully rejected by the judges of election, and were not counted by them for the contestant.

4th. That these errors, irregularities and wrongful acts occurred in every election district and precinct in the county, and that by reason thereof, between fifty and one hundred illegal ballots were counted for the contestee, and between one and twelve legal ballots cast for the contestant were rejected and were not counted for him, being sufficient in number to change the result of the election; and

5th. That the alleged errors and wrongful acts made a recount of the ballots necessary in order to arrive at a correct conclusion as to the result of the election.

The grounds assigned in support of the demurrer were: 1st. That the petition was insufficient in law. 2nd. That the validity, fairness, accuracy and truth of the canvass of the returns, and declaration of the result of the election, could not be put in issue by vague, general and indefinite charges such as those made in the petition. 3rd. That the contestee ought not to be required to answer any of the

specifications of alleged errors or wrongful acts, because the same were altogether vague, general and indefinite. 4th. Because, as the returns show upon their face, that the contestee received a plurality of all the votes cast, the Court was without power and jurisdiction to correct any mistake in the count in the manner prayed in the petition; and 5th. Because the petition admitted a recount to be necessary, whereas the Court was without jurisdiction to order a recount.

The petition thus challenged, however, will be seen to contain not only a distinct and positive averment that the contestant was duly elected to the office by a plurality of all the lawful votes cast at said election, but other equally distinct and positive specific averments as to certain described ballots wrongfully counted for the contestant, for reasons stated in the petition, and as to certain other ballots, in all respects properly marked, and being lawful and proper ballots, which were cast for the petitioner, and should have been counted for him, but were wrongfully rejected; and the petition distinctly averred that these errors and wrongful acts were sufficient in number to change the result of the election, and that they occurred in every election district and precinct of the county. We cannot doubt that these averments are sufficiently definite and precise to put in issue the fairness and accuracy of the return of the board of canvassers. It was so held in *Bragunier* v. *Penn*, 79 Md. 247, a contested election case, in which the averments of the petition were very similar to those before us; and in *Handy* v. *Hopkins*, 59 Md. 169, averments not nearly so definite and precise, were held sufficient to sustain the petition. The proper rule to be observed in disposing of objections to pleadings in election cases is so well stated in the leading case of *Mann* v. *Cassiday*, 1 Brewster, 27, that we cannot do better than to reproduce and adopt it: "It is obvious that if the Court were to require the same precision and certainty in an election petition as in the pleadings between parties to a suit at law, the object of which

pleadings is to produce a single issue, the difficulty of stat-
ing precisely the manner in which a fraud had been perpe-
trated or an undue return made, would, to a great degree,
nullify the law itself which designs that such charges
should be investigated. The rule must not be held so
strict as to afford protection to fraud, by which the will of
the people is set at naught, nor so loose as to permit the
acts of sworn officers, chosen by the people, to be inquired
into without an adequate and well-defined cause."

Whatever view might be held as to the want of power to
order a recount of all the ballots is not material on this
demurrer, because the demurrer is to the whole petition,
and if the other averments of the petition are sufficient to
found the inquiry as to the proper counting or rejecting of
the ballots alleged to have been wrongfully counted or
rejected, the petition cannot be held bad. We have no
hesitation, therefore, in sustaining the overruling of the
demurrer.

Coming next to the motion to quash the order for a re-
count of all the ballots, we may observe that the appellant's
counsel made no reference whatever to this question, nor
was it touched by the appellee's counsel in the argument,
though in their brief they cited some authorities which cer-
tainly tend to sustain the order. Its validity, however, must
depend upon the construction of our statute, and mainly
upon the effect of secs. 71, 121 and 133 of the Act of 1896,
ch. 202.

Sec. 71 provides that after the supervisors have received
from the judges of election the sealed ballot-boxes, they
shall safely keep them for six months "unless previously
notified to produce the same to be used in evidence in some
contested election, or judicial, or legislative investigation
then pending." This is a plain recognition of the common
law doctrine as stated by Judge Cooley in his work on *Con-
stitutional Limitations*, star page 625, that while the certifi-
cates of the various canvassing boards are conclusive in
collateral inquiries, they are only *prima facie* evidence in

direct proceedings in the Courts, which may go back of this *prima facie* case, and correct the returns from the ballots themselves, when they are still in existence and have been kept as required by law, since the right to the office comes from the ballots and not from the commission. This doc-trine was held in *Reynolds* v. *State*, 61 Ind. 421, where it was said: " In all cases wherein the right to an elective office is the subject-matter of an action, whether the right is to be determined in and by the statutory proceeding to contest an election, or in and by an action in the nature of a *quo warranto*, the ballots of the electors are the primary and original evidence of the result thereof; and where the statute expressly requires that the ballots shall be kept and reserved by a certain officer, for the use and subject to the order of the proper Court, to be used in the trial of a contested election, it is clear that such ballots must be re-garded, in the language of *Greenleaf*, sec. 82, ' as the best evidence of which the case is in its nature susceptible.' " And in *People* v. *Holden*, 28 Cal. 123, in reply to an argu-ment that resort could not be had to the ballots, the Court said: " If, at the time the board of canvassers must make their return, it was intended that the ballots should be *functus officio, and thereafter cease to be a part of the official returns of the election*, why provide that they should be pre-served and kept by the Clerk for at least six months ? Why not provide that they should be destroyed by the board of canvassers as was done by the inspectors prior to the amend-ment of the law?" This reasoning is equally applicable to the language of sec. 71 of our statute, and is conclu-sive, we think, that the ballots themselves can be resorted to, to correct the returns. Section 71 having thus provided that the ballots may be produced for this purpose, section 133 provides *how* they may be produced, first, before a jus-tice of the peace, and secondly, when the Court having juris-diction in the case may desire to examine them. In the first case, the Clerk of the Court (who in the counties is the cus-todian of the ballots) is required " to produce any such

ballots in regard to which testimony may be proposed to be taken before a justice of the peace taking examinations in a contested election, and shall furnish said justice copies of the same only on an order first had and obtained from the Circuit Court for the county or some one of the Judges thereof," but he is not allowed to *deliver* the ballots to the justice, nor to place him in control of them. The same section further provides: " Said Clerk shall retain such ballots in possession and custody until such ballots shall be required by the order of the Court having jurisdiction in the case to be delivered to said Court, or by order of the Senate or House of Delegates in whichever the seat is contested."

It follows that when the Court has thus possessed itself of the ballots, for the purpose, in the language of the statute, " to be used in evidence," it may examine and deal with them as with any other matter brought in evidence. It may be that errors may be alleged only in some of the districts and precincts, in which case, the Clerk can only be required to produce to the justice and furnish copies of " any such ballots ; " or it may be, as in this case, that they are alleged to exist in every district and precinct, in which case the Clerk must produce all the ballots and furnish copies of all such as may be demanded. In such case where the error is alleged to be in the illegal or defective marking of the ballot, where it has been counted, or in its rejection, where it is alleged to have been in all respects properly marked, it would be necessary to *examine* every ballot in order to determine how many were illegally or improperly counted or rejected. It is very clear, we think, that the order in this case, though *literally* an order for a recount of all the ballots, was not designed to operate as such for the mere purpose of testing the accuracy of the enumeration, but to permit the opening of the ballot-boxes, and the examination of the ballots *as evidence* for the purpose of ascertaining how many were illegally counted or rejected, and the deduction of such as were so illegally counted from the score of each candidate as certified by the

board of canvassers, and the addition thereto of such as were illegally rejected.   The order directed the *examination* by the respective counsel of all ballots one by one, and the laying aside of all ballots challenged by counsel, for the inspection of the Court at the hearing of the cause, and the tabulated statement filed by the Court with its decision shows upon its face that the Court only counted the disputed ballots, and added to the score of each candidate, as admitted by the respective counsel, such of the disputed ballots for each as the Court determined proper to be so counted.   This was certainly within the power of the Court, even though it should be held there was not power to order a mere recount, and such direction could not affect the validity of that part of the order which was clearly within the power of the Court.   We are not to be understood as admitting the validity of a naked order to recount all the ballots without any objection being alleged against all or any of the ballot-boxes.

In *Kneass's case*, 2 Parsons, 553, where the statute was very similar to our own, the Court said : " In the case of Sheriff Lelar, we held after full argument and deliberation that to induce us to order a recount of all the ballot-boxes of a county, *something definite must be preferred against each, and that we could not on a general allegation of errors believed to exist* in all, authorize the perilous experiment of testing every election return by the count of the ballot-boxes of every district in the county.   We refused this apparently reasonable request from a deep sense of the danger which would follow, if we should too readily accede to such plausible requisitions.   We saw that if we once acquiesced, on general allegations of error in the count, we would be bound by the result of such a count, and that thus we might be made the instruments of defeating the popular will, by affording convenient means of accomplishing it.   We knew we were bound to order an examination of the boxes and a recount of the ballots, whenever the return of a particular election district was assailed for causes

stated with sufficient precision to induce us to entertain a complaint preferred against it. We felt that further than this it would be unwise to go, and on that ground our foot was placed, from which it never since has been, nor ever will be moved." We approve and adopt the views thus expressed and the emphatic language in which they are clothed, and we are of opinion that what was contemplated by the order of the Court in this case, and what was done under it, it was within the power of the Court to order and to do, and that the motion to quash was properly overruled.

This brings us to the consideration of the so-called testimony.

Section 122, enacted in 1896, which gives a right of appeal to this Court directs that " the testimony taken in such cases shall be sent up to the Court of Appeals as part of the record." That has not been done in this case. In its place has been sent up an agreement of counsel which, upon its face states that it is made in order to save the expense of a long record. It provides that " the Court of Appeals of Maryland shall hear and determine the appeal in this case as per the following agreement." It then sets out a condensation or selection of the testimony taken before the justice and closes with this provision: " That the Court of Appeals shall consider any or all of the facts stated in this agreement, and determine whether or not any, a part, or all of the ballots hereinbefore referred to, were properly admitted as evidence in the cause.

" That the docket entries in this case, together with the pleadings and agreements, motions, exhibits, &c., and demurrers which have been selected by the attorneys for the contestant and the contestee in this cause, to be included in the record in this case, together with the original ballots set aside by the respective parties, and also the aforegoing agreement, shall constitute the record in this case, and on said record and said ballots the Court of Appeals shall hear and determine the case."

It would of course have been competent to try the case below upon an agreed statement of facts, and in such case a transcript of such agreed statement of facts sent up with the record as part thereof, would satisfy the requirement of the law because it would cover all that was passed on by the Circuit Court. But here an agreement of counsel made subsequent to the trial below, as to what is confessedly only a part of the testimony, is substituted for what the whole testimony actually was, so that it is impossible to know whether the state of facts upon which the judgment of this Court is invoked is the same presented to the Circuit Court, and upon which its judgment was rendered. If we should assume upon such a record to review that judgment we should do injustice alike to the Court, and to the appellee, whose title has been established by that judgment, subject to review only in accordance with settled legal rules which have been disregarded in the presentation of this appeal. A ballot-box which we were informed by appellant's counsel contained all the original ballots wrapped in separate packages to conform to the tabulated statement, and so endorsed by one of the Judges of the Circuit Court, was produced before us, and we were invited to examine these ballots as part of the record. This request we were obliged to decline as there were no means of authenticating these ballots or of the endorsement of the several packages, and as there is no provision of law in any event permitting the original ballots to be brought into this Court. Objection should have been made below to the counting of any ballots disputed by either party, and copies of such disputed ballots should have been incorporated in the record, with the ruling of the Court thereon. As neither the original ballots nor any copies of any ballots are before the Court there is no legal question raised as to whether any ballot was or was not legally marked and counted. In no case can this Court decide any point or question which does not plainly appear to have been decided below, and this record will be searched in vain to disclose any question of law decided be-

low, other than the demurrer and the motion to quash, unless it can be said properly to appear from the record that all non-initialed ballots were rejected by the Court. Section 66 of the election law expressly provides that all ballots shall be rejected which do not have endorsed thereon the name or initials of the judge who held the ballots, and there was consequently no error in their exclusion; nor if error, would it have been reversible error, because after their exclusion, it appears that the appellee still had a plurality of 18 votes.

For the reasons stated the judgment will be affirmed.

Inasmuch as the contestee stood, as he had a right to stand, upon the official returns of the canvassing board, we think that each party should pay one-half costs.

> *Judgment affirmed, each party to pay one-half of the costs above and below.*

(Decided June 16th, 1900.)