## SUPERIOR COURT OF BALTIMORE CITY.

Filed December 31, 1903.

FRANK C. WACHTER

VS.

ROBERT M. McLANE.

*William Pinkney Whyte, Thomas Ireland Elliott, Lewis Putzel* and *Morris A. Soper* for petitioner.

*Bernard Carter, John P. Poe* and *Alonzo L. Miles* for respondent.

Argued before HARLAN, C. J., PHELPS and STOCKBRIDGE, JJ.

HARLAN, C. J., PHELPS and STOCKBRIDGE, JJ.—

It was alleged, *inter alia*, in the petition by which this contest, involving the title to the office of Mayor of Baltimore city was begun, that the ballots cast in the sixth precinct of the fourth ward, the seventh precinct of the sixth ward, the eleventh precinct of the thirteenth ward, and the twelfth precinct of the eighteenth ward, at the Mayoralty election held in the city of Baltimore on the 5th day of May, 1903, were not included by the Supervisors of Election, acting as a Board of Canvassers, in their official statement of the votes cast at said election for the petitioner and respondent, and upon which a certificate of election was issued to the respondent.

This allegation was admitted in the answer of the respondent, who consented to have the ballots cast in said four precincts counted. After the tak-

ing of testimony for the purpose of establishing a prima facie case, justifying a recount in the other 304 election precincts of Baltimore city, we were of opinion that before we could determine whether, as alleged in the VII paragraph of the petition "errors, irregularities and wrongful acts had been committed in each election precinct in the city by the judges of election to the prejudice of the petitioner, more than sufficient in number to change the result of the election, as announced by the Board of Canvassers, and to elect your petitioner to said office," it was necessary to have the ballots in said four precincts counted, and accordingly, on the 3rd day of December, 1903, we ordered the ballots cast in the sixth precinct of the fourth ward, the seventh precinct of the sixth ward, the eleventh precinct of the thirteenth ward, and the twelfth precinct of the eighteenth ward at the election on the 5th day of May, 1903, "to be counted for the purpose of ascertaining how many ballots were cast in each of said precincts for the respective parties to this cause, in order that such of said ballots as should be found to be legal ballots should be added to the numbers cast for each of the said parties, as certified by the Supervisors, of Elections," and prescribed rules for the conduct of said count. A count of the undisputed ballots in those precincts was accordingly made, and upon the return we have been required to inspect the ballots which were challenged by the respective parties, and to determine which of them should be counted. All of the challenged ballots have heretofore been passed on in open Court except thirty-eight ballots in the sixth precinct of the fourth ward, and forty-four ballots in the seventh precinct of the sixth ward, which were reserved for further consideration.

These comprised, as to these precincts, what have been designated in this case as "defaced ballots." The evidence in regard to these is of two kinds, that given by the witnesses examined, and that afforded by the inspection of the physical condition of the ballots themselves. If the former only was before the Court, it would be impossible from it to say, that effect ought to be given to any of the "defaced ballots," as described by the witnesses, but the inspection of the ballots themselves, the location and character of the defacing marks upon the large majo̅r-

ity of them, lead to an entirely different conclusion.

In no proper sense can they be termed identifying marks, or marks intended for the purpose of identification; there is a general similarity among them so far as regards the place where the defacing marks are found upon the ballot, and the scratchy form in which most of them appear, but the nature of the marks themselves, their characteristics when compared with the cross-marks made by the voters, the manifestly different conditions under which they were made from those under which the cross-marks in the squares were made, in many cases even puncturing the paper, make it impossible to conclude that they were placed there by the voter, or before the ballot had left the hands of the voter.

The provisions of Section 66 of the Election Law are that any mark other than the cross-mark within the square shall cause the ballot to be rejected. Yet explicit as this provision is, it was not construed in the case of Coulehan vs. White, 95 Md., 712, to exclude a ballot, accidentally defaced by one of the judges of election. And if the accidental defacement of a ballot by an election official will not operate to cause it to be rejected, much less should a defacement placed upon the ballot designedly by such an official.

In this case the defacing marks were, in the opinion of the Court, either the result of careless handling on the part of the election officials or a deliberate attempt to disfranchise certain voters, and as far as counting them goes, it makes no difference which view may be adopted, and when the conclusion is reached, as has been done, that on the great majority of these ballots the defacing marks were not the act of the voter, but of an officer of election, such ballots must be counted. While what has been said applies to the larger number of these ballots, it does not to all, and we have counted of these "defaced" ballots as follows:

Fourth ward, sixth precinct, total "defaced" ballots thirty-eight, of which there will be counted for Mr. Wachter thirty-five, and rejected three marked for Mr. Wachter.

In the sixth ward, seventh precinct, total "defaced" ballots forty-four, of which there will be counted for Mr. Wachter thirty-eight, for Mr. McLane

three, and rejected three marked for Mr. Wachter, to which several countings and rejections of the said ballots in said two precincts above named, inasmuch as the counsel for the parties have not heretofore had an opportunity to reserve an exception, exceptions will be considered as reserved, if so desired by the counsel for the respective parties.

The number of lawful ballots cast in each of the four precincts which were ordered counted being thus ascertained, we are now in a position to determine how many votes are to be added to the total number of votes cast for each of the parties to this cause, as certified by the Supervisors of Elections:

| | Mc-Lane | Wachter |
|---|---|---|
| The votes as certified by the Supervisors of Elections were | 46,852 | 46,288 |
| The count of the ballots in the four precincts which we ordered counted, resulted as to concededly valid votes: | | |
| Ward 4, Precinct 6 | 120 | 106 |
| Ward 6, Precinct 7 | 117 | 146 |
| Ward 13, Precinct 11 | 74 | 140 |
| Ward 18, Precinct 12 | 96 | 124 |
| Of the ballots challenged by the two parties there were then counted by the Court upon inspection: | | |
| Ward 4, Precinct 6 | 10 | 3 |
| Ward 6, Precinct 7 | 10 | 3 |
| Ward 13, Precinct 11 | 4 | 7 |
| Ward 18, Precinct 12 | 4 | 6 |
| Of the defaced ballots as hereinbefore recited, there are now counted: | | |
| Ward 4, Precinct 6 | — | 35 |
| Ward 6, Precinct 7 | 3 | 38 |
| Thus giving as the total vote in the city cast for two candidates | 47,290 | 46,896 |
| Or an apparent plurality for Mr. McLane of | 394 | |

To justify a recount in any of the precincts canvassed by the Board of Supervisors, there must be shown by the petitioner a *prima facie* case of errors committed in the count of the ballots to his prejudice, sufficient in number in the aggregate, to overcome this apparent plurality. For this pur-

pose something definite must be preferred against each, and a general allegation of errors committed, or proof of errors without proof that they operated to the prejudice of the petitioner, or the extent to which they so operated, cannot afford a ground for the perilous experiment of testing by a recount the returns in each precinct. Leonard vs. Woolford, 91 Md. 637.

In regard to ninety-nine precincts of the city the petitioner has offered no evidence at all, while he has proven that in twenty-two others the count as made by the judges of election was strict and accurate, and manifestly it would be improper to direct any re-inspection of the ballots in these 121 precincts.

To meet the burden of *prima facie* evidence which the law casts upon him, the petitioner, in order to justify a recourse to the ballots; and an inspection and recount of them, has endeavored in the remaining 183 precincts to supply the needed proof. We have carefully examined and re-examined all of the voluminous testimony taken in this case, and have assumed the truth of all the petitioner's testimony, and of every reasonable inference which could be drawn from it, and have disregarded the testimony of the respondent, except when it was of benefit to the petitioner, and have reached the conclusion that he has failed in all but forty precincts.

By the brief filed on behalf of the petitioner, and in the argument of his counsel, distinct, definite claims were asserted to have been made out in thirty precincts, aggregating sixty votes. A careful examination of the evidence, however, discloses but twenty-nine precincts in which definite errors to the prejudice of the petitioner are sufficiently supported by proof to constitute the requisite *prima facie* evidence, and that only to the extent of fifty-one ballots. In the remaining eleven precincts the alleged ground upon which a recount is sought is "defaced ballots."

The brief of the petitioner claims with regard to these that evidence has been given to support a claim of 269 ballots, yet even for the purposes of a *prima facie* case the evidence does not disclose in excess of 240 such ballots. Considered simply in the light of the testimony none of these 240 ballots were proper to have been counted, but if the widest effect be given to the term "defaced ballots," in the light of ballots of this description before the Court in the sixth precinct of the fourth ward, and the seventh precinct of the sixth ward, and full effect be conceded to each one of these 240 ballots, these, together with the fifty-one ballots previously mentioned amount to but 291 ballots, or 103 short of overcoming the apparent plurality for Mr. McLane.

While in the foregoing effect has apparently been given to the testimony of the judges of election, and to which special exception was taken, it is not intended hereby to determine as to the competency, *vel non*, of such witnesses. Their testimony has been used, and used only, for the purpose of showing that if there be accorded to it the full effect which can properly be claimed for it by the petitioner, it would not afford sufficient ground for ordering a recount in any of the 304 precincts.

Since, therefore no sufficient ground appears for ordering any reinspection or recount of the ballots in the 304 precincts of the city, the apparent plurality of Mr. McLane must be taken as an ascertained plurality of at least 103 votes, and the petition of the contestant will be dismissed with costs.