[No. 11244.  Department Two.  June 10, 1913.]

ANDREW J. QUIGLEY, *Appellant*, v. BYRON PHELPS, *Respondent*.[1]

ELECTIONS—CONTEST—NATURE AND FORM. A proceeding to set aside a certificate of election issued by the canvassing board declaring the defendant elected to a prospective official term, is an election contest and controlled entirely by statute, Rem. & Bal. Code, §§ 4941-4957.

SAME—COMPLAINT—GROUNDS. A complaint in an election contest alleging that the officers in each of the precincts wrongfully, intentionally and fraudulently counted for the defendant ballots actually cast for the plaintiff, sufficient to change the result, sufficiently charges "malconduct" on the part of such officers, within the meaning of Rem. & Bal. Code, § 4941, specifying the grounds for contest.

[1]Reported in 132 Pac. 738.

Same—Contest—Recount—Pleadings — Bona Fides. A general charge of malconduct in that the election officers in each of 391 precincts of a county fraudulently counted ballots for the defendant which were actually cast for the plaintiff is so lacking in the essential element of good faith as to warrant the court in refusing to order a recount of the ballots until preliminary evidence to impeach the returns be adduced.

Same—Recount—Ballots—Preliminary Evidence to Impeach. While the ballots may be conceded to be the best evidence of the result of an election, in the absence of a statute requiring a recount on a contest, it is not an abuse of discretion to refuse to order a recount of the ballots in a populous county, unless preliminary evidence is first adduced to impeach the returns, where the charges of malconduct were general and vague, and the work of recounting would require much time and expense.

Appeal from a judgment of the superior court for King county, Albertson, J., entered December 12, 1912, dismissing an election contest for want of preliminary evidence to impeach the returns. Affirmed.

*Geo. H. Rummens,* for appellant.

*W. H. White, Edgar C. Snyder,* and *Kit Gould,* for respondent.

Ellis, J.—This is an appeal from a judgment dismissing a proceeding to contest an election. It involves the same proceeding a review of which by certiorari was sought and denied in *State ex rel. Quigley v. Superior Court,* 71 Wash. 503, 129 Pac. 83.

The contestant, claiming to have been elected county auditor of King county at the last general election, instituted proceedings in the superior court of King county against Byron Phelps as defendant, to set aside the certificate of election issued by the canvassing board declaring the defendant elected to that office. As pointed out by the trial court, the proceeding is not in *quo warranto,* either as at common law or as given by our analogous statutory action. It is not an action to oust an intruder or a usurper, but to try out the right to a prospective official term. It is not

founded upon, nor aided by, any common law right.   The right to a contest such as here presented rests solely upon, and is limited by, the provisions of the statute relative thereto. Rem. & Bal. Code, §§ 4941-4957 (P. C. 167 §§ 109-133). By this statute, § 4941, a contest as to a county office may be instituted, not only by a defeated candidate, but by any qualified elector of the county; but only for the following enumerated causes:

"(1)   For malconduct on the part of the board of judges or any member thereof;

"(2)   When the person whose right to office is contested was not, at the time of election, eligible to such office;

"(3)   When the person whose right is contested shall have been, previous to such election, convicted of an infamous crime, by any court of competent jurisdiction, such conviction not having been reversed, nor such person relieved from the legal infamy of such conviction;

"(4)   When the person whose right is contested has given to any elector or inspector, judge or clerk of the election, any bribe or reward, or shall have offered any such bribe or reward for the purpose of procuring his election.

"(5)   On account of illegal votes."

The complaint or statement of contest in the case before us alleges the ground of contest as follows:

"That in each and every of said precincts of said county the said board of judges of elections thereof, wrongfully, fraudulently, intentionally and unlawfully counted and recorded in the official tally sheet of said several precincts, for the said defendant, votes which were given and cast for this plaintiff, and in each and every of said precincts the said board of judges of election thereof wrongfully, fraudulently, wilfully and unlawfully failed and neglected and omitted to count for and to enter upon the tally sheets votes which were given and cast for the plaintiff."

It is also alleged that, in truth and in fact, there were more votes cast for the plaintiff than for any other person for the office in question, and that he was duly elected to the office.   It is admitted that the returns show that the defend-

ant received in the neighborhood of 600 more votes than the plaintiff. It is manifest that, if any cause of action was stated, it rested upon the first of the above enumerated statutory grounds, namely, "malconduct on the part of the board of judges or any member thereof." The statute (Rem. & Bal. Code, § 4948; P. C. 167 § 116), provides that the statement of cause shall not be rejected for want of form, "if the particular cause or causes of contest shall be alleged with such certainty as will sufficiently advise the defendant of the particular proceedings or cause for which such election is contested." The statute further provides that the rules of law and evidence as applied to ordinary actions shall govern the court in hearing the contest, in so far as such rules are applicable. Rem. & Bal. Code, § 4952 (P. C. 167 § 120). In view of these provisions, and the liberal rule applicable to pleadings in ordinary actions, we think the statement of contest sufficient. It is admitted that there are 391 election precincts in King county, and it is alleged that in every one of these the election officers—and there are three in each precinct—wrongfully, intentionally and fraudulently counted for the defendant ballots actually cast for the plaintiff. Disregarding, as we must, the general allegation of fraud, as mere epithet or at most a conclusion (7 Ency. Plead. & Prac., pp. 382, 383), there still remains the charge that sufficient votes actually cast for the plaintiff were counted for the defendant to have changed the result. While the word is not used in the statement, this conduct would amount to "malconduct" regardless of the motive by which it was actuated. *Hadley v. Gutridge*, 58 Ind. 302; *Minor v. Kidder*, 43 Cal. 229.

Upon the trial, the plaintiff demanded that the ballot boxes for each of the precincts of the county be admitted in evidence and the ballots recounted. The trial judge, in passing upon the motion to dismiss the contest on the statement or complaint, stated his views on this question so clearly that we take the liberty of a quotation. He said:

"Now there seems to be every consideration of public policy which should influence the court to be cautious and slow in ordering the opening of the ballot boxes. Every presumption is in favor of the faithful performance of official duty. Under our system men presumably qualified are appointed as election judges and clerks, and when they have returned the vote cast under their supervision with a certificate of the number of votes cast for the respective candidates, the law throws around that return the shield of the legal presumption that these public officials have performed their duty. Likewise when the canvassing board in auditing these returns have issued a certificate of election, that certificate stands as speaking the fact in a court of law until the verity of it has been overcome by clear and satisfactory proof. It cannot be that it was contemplated that any voter of this county may through idle whim or audacity of purpose institute an election contest with regard to any county office without some proof to present in advance of the opening of the ballot boxes that there is a just cause presented to the court. It is hard to conceive that the legislature would put it in the power of such an irresponsible and unscrupulous voter to subject the community to the disturbance of an election contest and the taxpayers to the cost of such a proceeding without a reasonable case presented to the court to justify the opening of the ballot boxes. In a populous community such as King county, where a hundred thousand or more ballots are cast, such an election contest means the consumption of the time of the court for a month or more perhaps, at a heavy cost to the taxpayers, at the cost of the sacrifice of public peace and tranquility, at the cost of embarrassment to the official declared to have been elected in the discharge of his duties, and the court should adopt, it seems to me, such construction of the statutes as would require a contestant, before these ballot boxes are opened and ordered to be counted, to submit some proof to satisfy the court in a reasonable way that there is a just ground to believe that the election officials have failed to perform their duty."

Again, when the ballot boxes were actually offered, the trial judge said:

"Unless the plaintiff is prepared to submit to the court in advance of the opening of the ballot boxes some proof sup-

porting the charge of malconduct on the part of the election officials, he should not charge such malconduct in his complaint.   There are 391 precincts in this county, with three election officers in each precinct, and the charge in the complaint is that every one of these men and women was guilty of official misconduct in receiving the votes cast at the polls and counting votes for the defendant that were cast for the plaintiff intentionally.   It seems to me that when such a charge is brought against every official connected with the election at the polls, there should be some proof at least, against some of them.   But even if there should be proof of malconduct in one precinct on the part of one or more of the election officials, it would not be proof of malconduct on the part of the officials in another precinct; and logically, the court would be obliged to hold that before the ballot boxes of any precinct could be opened proof of malconduct should be submitted to the court as a condition precedent to the opening of the boxes.   If I understand the statement of counsel, he declined to offer any proof at all in support of the charge of fraud and wrongful and intentional misconduct.   Unless the court will permit the ballot boxes to be opened, if that is the proposition of counsel, to be consistent with my ruling, I must dismiss this proceeding."

The plaintiff has appealed, and these rulings present the real question for our consideration.

The appellant insists that the ballots themselves are the primary and best evidence of the number of votes received by any candidate, and this is undoubtedly true.   15 Cyc. 425; *People ex rel. Budd v. Holden*, 28 Cal. 124; *Coglan v. Beard*, 65 Cal. 58, 2 Pac. 737; *Id.*, 67 Cal. 303, 7 Pac. 738; *Tebbe v. Smith*, 108 Cal. 101, 41 Pac. 454, 49 Am. St. 68, 29 L. R. A. 673; *People ex rel. Keeler v. Robertson*, 27 Mich. 116; *Edwards v. Logan*, 114 Ky. 312, 70 S. W. 852, 75 S. W. 257; *Lucas v. Avis*, 28 Ky. Law 184, 89 S. W. 1; *Kingery v. Berry*, 94 Ill. 515; *Leonard v. Woolford*, 91 Md. 626, 46 Atl. 1025; *Garms v. People*, 108 Ill. App. 631; *Howser v. Pepper*, 8 N. D. 484, 79 N. W. 1018; *Caldwell v. McElvain*, 184 Ill. 552, 56 N. E. 1012.

He also contends that, when it is shown, as he offered to

show, that the ballot boxes have been kept intact and the ballots inviolate, they should be received in evidence without any other evidence, citing the following cases: *People ex rel. Budd v. Holden, Coglan v. Beard, Tebbe v. Smith, Kingery v. Berry, Edwards v. Logan,* and *Leonard v. Woolford, supra; Langley v. Head,* 142 Cal. 368, 75 Pac. 1088; *Abbott v. Hartley,* 143 Cal. 484, 77 Pac. 410; *Catron v. Craw,* 164 Ill. 20, 46 N. E. 3; *Reynolds v. State ex rel. Titus,* 61 Ind. 392; *Hudson v. Solomon,* 19 Kan. 177; *Gantt v. Brown,* 238 Mo. 560, 142 S. W. 422; *People v. McClellan,* 191 N. Y. 341, 84 N. E. 68.

In some of these decisions it is noted that the statutes involved expressly required the production, opening, and inspection of the ballots on demand in any contest, and the wording of the statute seems to have been regarded as controlling. *Catron v. Craw* and *Kingery v. Berry, supra.* In most of these cases the specific question here presented was not raised so far as the opinions show. They merely hold that, as between the canvass of ballots made by the election officers and the ballots themselves, the ballots, if they have been kept inviolate, are the best evidence. The real question here presented is this: Must the court, on mere suspicion and demand of any elector, and without any proof *aliunde* the ballot box tending to impeach the regularity or integrity of the official count and canvass, order a recount of the ballots? In only two of the decisions cited by appellant was this question directly passed upon.

The Missouri case, *Gantt v. Brown, supra,* overruled prior decisions of that court, *State ex rel. Funkhouser v. Spencer,* 164 Mo. 23, 63 S. W. 1112, and *Montgomery v. Dormer,* 181 Mo. 5, 79 S. W. 913, in which it had been held that the court trying the contest had no authority to order the clerk to open the ballots and compare them by number with the voting lists in order to determine how the individual electors had voted, because that would destroy the effect of a constitutional provision for a secret ballot. The constitution of Missouri,

art. 8, § 3, providing for the secret ballot, contains, however, a proviso that in cases of contest the ballots may be counted and compared with the voting lists, "under such safeguards and regulations as may be prescribed by law"; and the Revised Statutes of Missouri, 1909, § 5939, read as follows:

"Either house of the general assembly, or both houses in joint session, or any court before which any contested election may be pending, or the clerk of any such court in vacation, may issue a writ to the clerk of the county court of the county in which the contested election was held, commanding him to open, count, compare with the list of voters and examine the ballots in his office, which were cast at the election in contest, and to certify the result of such count, comparison and examination, so far as the same relates to the office in contest, to the body or court from which the writ is issued."

Both the proviso in the constitution and the statute are at least capable of the construction that the ballots in any case of contest shall be immediately resorted to. They practically make the ballots themselves the only evidence in any case, without antecedent evidence of malconduct on the part of the election officials or anything impeaching their return. Under these provisions, it is difficult to understand how the Missouri court ever held otherwise.

The New York case, *People v. McClellan, supra,* holds with the appellant's contention here, under a statute similar to ours, but we do not feel warranted in following the broad rule there laid down. Such a rule would, as it seems to us, render the remedy by contest so easy of abuse as to invite a season of turmoil consuming weeks of the time of our courts after every election, to the exclusion of ordinary litigation and at great public expense. An election contest is not an ordinary adversary proceeding. The public is concerned, and it is the public interest to which the courts will look in such a case rather than the interest of the particular contestants. *State ex rel. McCallum v. Superior Court,* 72 Wash. 144, 129 Pac. 900; *Minor v. Kidder, supra.* For this

reason a contestant will not be permitted to take judgment by default. *Keller v. Chapman*, 34 Colo. 635. For the same reason it must follow that, in determining whether the ballot boxes shall be opened and the votes recounted on mere suspicion and on mere demand—which is the effect of the complaint before us—and without any evidence impeaching the conduct of the election officers in making the original count and canvass, the courts should view the matter in all of its bearings as affecting the public interest. If the public interest would suffer from such a course, if the mischiefs resulting therefrom would be great and widespread, as seems to us inevitable, and if it does not appear that such a course is necessary to the reasonable preservation of the purity of the ballot, then the courts are not warranted in adopting that course, in the absence of a statute so directing. It is certainly not asking too much of a person who, by a sweeping wholesale charge of deliberate misconduct on the part of every election officer of his county, seeks to consume weeks of the time of the court by a recount of all the ballots at the public expense, to require him to show in advance some slight evidence of fraud or malconduct of such officers, reasonably calculated to overcome the universal *prima facie* presumption of the regularity and correctness of official action. That such a presumption exists in this as in other cases of official action is evidenced by the fact that the certificate of election is based upon that action. It will not do to say that the contestant if unsuccessful pays the costs. The taxable costs of such a proceeding are insignificant as compared with the actual expense to the public, direct and indirect. While every good citizen must concur in the sentiment that no price is too great to be paid for a pure ballot, we can hardly conceive that it is necessary to the purity of the ballot that the court, upon a mere assertion of an impalpable suspicion, may be used as a dragnet with which to fish for evidence without any antecedent showing of the slightest circumstance tending to impeach the official count.

As said in the supreme court of Minnesota in *O'Gorman v. Richter*, 31 Minn. 25, 16 N. W. 416:

"It may admit of doubt whether a court is bound to open the ballot boxes and make a recount, unless there be some evidence furnishing ground for supposing that a miscount might have been made by the judges. If a party can demand a count by the court without any such showing, it could often be resorted to as a mere fishing expedition."

It is true, as said by the Missouri court in *Gantt v. Brown*, *supra*, chiefly relied upon by the appellant:

"When *bona fide* charges of fraud are made, it should be the policy of the law to unlock all competent evidence to either prove or disprove the charges."

While heartily subscribing to the wholesome rule so announced, we still think that the charge of fraud or malconduct must be a *bona fide* charge, and that charge which is founded in such vague suspicion that no evidence can be produced as to the conduct of the election officials, *aliunde* the ballot boxes, tending to show any measure of irregularity or malconduct, does not seem to possess what can be said in law to constitute the essential element of good faith. It smacks rather of recklessness. No *bona fide* issue is presented between the official canvass and the ballots themselves until some evidence tending to show official misconduct has been adduced. Nor will it do to say that the purity of the ballot is the basis of our institutions, and to fail to protect the one is to jeopardize the other. That is a truism, but it does not warrant the court in disregarding at the threshold the presumption of rectitude which the law has universally accorded to official action, and in giving no weight to the official count in the absence of anything tending to impeach it. The law has entrusted to the duly appointed election officers the duty of counting the ballots. There is a legal presumption that they have done so honestly and carefully. Their returns are entitled to the presumption of regularity. For the court to recount the ballots without any evidence of

wrongdoing on their part would be to disregard this presumption. It would be an assumption of a lack of integrity or competency on the part of every one of the 1,173 election officers of King county, without any antecedent proof of malconduct of any of them. If this is necessary to the preservation of the purity of the ballot in King county, then it is necessary in every other county in the state. The whole judiciary of the state may, and logically should, be called upon to recount the ballots as to every county office in every county on a mere assertion of suspicion by any elector that mistakes may have been made, and weeks of time so consumed without any tangible foundation for a belief that the result would be changed in any instance.

But even assuming that the trial court may in its discretion disregard the official count and proceed with a recount upon mere demand, can we say that it is an abuse of discretion to refuse to make the recount without some evidence of malconduct in the official count? We think not. As said by the supreme court of Colorado in a similar case:

"The order of proof is always discretionary with the trial court, and will not be interfered with by an appellate court except where there is an abuse of that discretion. The reasonable requirement of the trial court that some evidence should first be introduced as to these charges of fraud before going to the expense of bringing in, from the different precincts of the county, the election judges with their keys to open the ballot boxes, was not only within the legal discretion of the trial court, but commends itself to our judgment as a wise exercise of that discretion." *Kindel v. Le Bert*, 23 Colo. 385, 48 Pac. 641, 58 Am. St. 234.

The above decision in no manner runs counter to the earlier case cited by the appellant from the same court, *Clanton v. Ryan*, 14 Colo. 419, 24 Pac. 258. In that case nearly one hundred witnesses had been examined, and their evidence tended to show "many gross errors, mistakes, and frauds in the count and return of the votes, and other misconduct of

some of the election officers, as alleged in said statement." On this state of facts the court said:

"Under the causes of contest set forth in the sworn statement of the contestor, a recount of the ballots in the precinct where error, mistake, fraud, malconduct or corruption was charged should have been ordered as a matter of course upon request of the complaining party. A mere recount does not involve any exposure of the secrecy of the ballot. *Upon the production of evidence tending to show error, mistake, fraud, malconduct or corruption on the part of the election board, or any of its members, as charged, in the matter of receiving, numbering, depositing, or canvassing the ballots, or other illegal or irregular conduct in respect thereto, an inspection and comparison of the ballots with the poll-lists should also have been allowed, in connection with the oral evidence in reference thereto.* The secrecy of the ballot is not so important as its purity; and when, in a proper proceeding, there is evidence tending to show that the ballots of electors have been changed, tampered with or destroyed, either by mistake or by the fraudulent conduct of any member or members of the election board of any precinct, or any other person or persons, it is the right of the public, and of the electors themselves, as well as the candidates, to have such matters thoroughly investigated; and courts of justice, under such circumstances, should be swift and fearless to assist in all lawful and proper ways to ascertain the truth in respect to such charges, and to rectify so far as possible any and all wrongs, whether of mistake, negligence, or crime, which may be proved to have been committed against the elective franchise."

It is manifest that the first sentence of this quotation, which was alone quoted by the appellant, was uttered in view of the proof of fraud and mistakes which had already been made, and that it must be construed in connection with what follows, which we have italicized. So taken, the decision distinctly outlines and clearly supports the views which we have expressed. It exemplifies a sane application of a sound rule.

In the case before us, the only evidence offered as to any

irregularity was that the footings made by the election officers on the tally sheets were in many instances wrong; but it is admitted that these errors were all corrected by the canvassing board. They were mere mistakes in addition and did not materially change the result. This was no evidence of fraud or malconduct, nor even of mistake in the actual tally. The sheets themselves furnished the means of correction, and the correction of such errors is the very purpose of the canvass. The canvassing board has no other reason for existence.

The argument that a contestant, though strongly suspecting malconduct, would have no means of proving it outside of the ballots themselves does not impress us. Some evidence of the wholesale conspiracy charged could be produced. All of the 1,173 election officers would be competent witnesses to testify as to the manner of making the count. If there was any irregularity in their action such as would authorize a recount, their testimony would disclose it. *Packard v. Craig*, 114 Cal. 95, 45 Pac. 1033; *Kindel v. Le Bert, supra.*

In conclusion, we say that if the legislature had intended that the entire vote of any county, and for the same reason, of every county in the state, should be recounted upon mere demand (and that is what the appellant's contention amounts to), it would have been easy to so state. If it was intended that the certificate of election based upon the official count by the election officers should have no force as against an unsupported charge of fraud or incompetence on their part, and that official action shall no longer possess even a *prima facie* presumption of rectitude, then the legislature should have so stated. If such is to be declared the public policy of this state, then the functions of election officials will become an idle form. Much time and expense would be saved by simply limiting their duties to a mere reception and sealing of the ballots and delivering them to the courts for counting in the first instance.

We find no abuse of discretion in the refusal of the trial

court to recount the ballots, in the absence of any evidence
of malconduct on the part of the election officials.

The judgment is affirmed.

CROW, C. J., MAIN, FULLERTON, and MORRIS, JJ., concur.