### LUEDERS et al. v. EHLINGER.
### No. 7561.

Court of Civil Appeals of Texas. Austin. Oct. 10, 1930.

Theo. W. Lueders, of Lagrange, for appellant.

Jno. P. Ehlinger, of Lagrange, for appellee.

McCLENDON, C. J.

Appeal from a judgment awarding appellee a writ of mandamus requiring the Fayette county Democratic executive committee to open the ballot boxes in 21 designated voting precincts in Fayette county, and count the ballots cast therein for the office of county judge at the primary election held July 26, 1930.

The facts follow: Appellant Lueders and appellee Ehlinger were opposing candidates in the primary for county judge. Upon the face of the returns Lueders received a majority of 27 votes. Ehlinger filed with the executive committee a contest under R. S. art. 3148, wherein he alleged a specific number of ballots (in all more than enough to change the result) in each of the 21 named boxes were in fact cast for him, but which "through fraud, inadvertence, or mistake" were counted in favor of Lueders. The application to contest was not verified. Requisite notice was given to the contestee, and the executive committee convened and proceeded to hear the contest. Contestant offered evidence showing that the ballot boxes had been properly preserved; were in the possession of the county clerk, who waived issuance of subpoena duces tecum; whereupon contestant tendered the ballot boxes and demanded that they be opened and the ballots recounted. This the committee declined to do unless contestant should offer some proof supporting or tending to support his allegations of fraud, inadvertence, or mistake. Contestant declined to offer any such proof, contending that the ballots themselves were the best evidence; and demanded, as before, the recount. This the committee refused, and dismissed the contest. This proceeding was then instituted in the district court of Fayette county.

The petition set out in detail the contest proceedings, and based the right to mandamus upon the fact that the district court of Fayette county was then in vacation and would not again convene until November 17, after the general election, thus affording no relief by appeal from the committee's action, or by original contest filed in the district court, since under the holdings of the Supreme Court (Ashford v. Goodwin, 103 Tex. 491, 131 S. W. 535, Ann. Cas. 1913A, 699;

Moore v. McCallum, 116 Tex. 142, 287 S. W. 493) the statute (article 3152) is void in so far as it authorizes the district judge in vacation to hear an election contest.

The recent case of Leslie v. Griffin (Tex. Com. App.) 25 S.W.(2d) 820, controls the case at bar. There the election officials had thrown out one of the boxes because the returns delivered to the county judge were not sealed; and the Commission of Appeals held that the district court was without power by mandamus to compel inclusion of the box in the returns on the ground that the question there presented was a political one, over which neither the Constitution nor the statutes had given the courts control.

We do not construe the opinion as denying to the courts power to compel a purely ministerial act on the part of election officials, where refusal so to perform invades private right. R. S. art. 3142 clearly gives that right with reference to primary elections, in so far as it can be given by statute. The Leslie Case is authority, however, for the proposition that the action sought to be compelled is not a purely ministerial duty. In fact, the case here presented is much stronger than that in the Leslie suit. There, the officers had refused to count one of the boxes, on the sole ground that the envelop containing the returns was not sealed. This was a clear cut question of law. The holding that the action of the election officials could not be controlled by mandamus necessarily included a holding that the throwing out vel non involved some degree of discretion, and not a purely ministerial duty. The question here arises out of the action of the executive committee, in the course of hearing an election contest, in refusing to admit in evidence the ballot boxes until what they regarded as a proper predicate for their admission had been laid; namely, some showing tending at least to establish the allegations of fraud, inadvertence, or mistake. Manifestly this action involved discretion and not a purely ministerial duty.

That mandamus will not lie to compel an official to perform an act involving discretion is too well settled to require citation of authority.

Upon the question of opening ballot boxes, when fraud is alleged, we quote the following from 20 C. J. p. 255: "Since the ballots themselves, when their integrity has been established, are the best evidence of the result of an election, it is held by some authorities that in a statutory contest where error, mistake, fraud, misconduct, or corruption in counting the ballots or declaring the result of an election is alleged a recount of the ballots upon request of the complaining parties should be ordered as a matter of course. But a party has no right to demand a recount as a mere fishing excursion, and the better rule seems to be that a resort to the ballots cannot be had until the contestant produces evidence which indicates at least a probability that a recount would decide the election in his favor, that there were frauds, irregularities, or mistakes committed in the acceptance of the ballots and return of their count, or that there is error in the record declaring the result of the election."

A leading case upon the subject is Quigley v. Phelps, 74 Wash. 73, 132 P. 738, 741, Ann. Cas. 1915A, 679. In commenting upon the following quotation from a Missouri case (Gantt v. Brown, 238 Mo. 560, 142 S. W. 422): "When bona fide charges of fraud are made, it should be the policy of the law to unlock all competent evidence to either prove or disprove the charge"—the court say: "While heartily subscribing to the wholesome rule so announced, we still think that the charge of fraud or malconduct must be a bona fide charge, and that charge which is founded in such vague suspicion that no evidence can be produced as to the conduct of the election officials, aliunde the ballot boxes, tending to show any measure of irregularity or malconduct, does not seem to possess what can be said in law to constitute the essential element of good faith. It smacks rather of recklessness. No bona fide issue is presented between the official canvass and the ballots themselves until some evidence tending to show official misconduct has been adduced. Nor will it do to say that the purity of the ballot is the basis of our institutions, and to fail to protect the one is to jeopardize the other. That is a truism, but it does not warrant the court in disregarding at the threshold the presumption of rectitude which the law has universally accorded to official action, and in giving no weight to the official count in the absence of anything tending to impeach it. The law has intrusted to the duly appointed election officers the duty of counting the ballots. There is a legal presumption that they have done so honestly and carefully. Their returns are entitled to the presumption of regularity. For the court to recount the ballots without any evidence of wrongdoing on their part would be to disregard this presumption."

The court further say:

"But, even assuming that the trial court may in its discretion disregard the official count and proceed with a recount upon mere demand, can we say that it is an abuse of discretion to refuse to make the recount without some evidence of malconduct in the official count? We think not. As said by the Supreme Court of Colorado in a similar case:

" 'The order of proof is always discretionary with the trial court, and will not be interfered with by an appellate court except where there is abuse of that discretion. The

reasonable requirement of the trial court that some evidence should first be introduced as to these charges of fraud before going to the expense of bringing in from the different precincts of the county the election judges, with their keys, to open the ballot boxes, was not only within the legal discretion of the trial court, but commends itself to our judgment as a wise exercise of that discretion.' Kindel v. LeBert, 23 Colo. 392, 48 P. 641, 644, 58 Am. St. Rep. 234." See, also, 9 R. C. L. pp. 1163, 1164; and authorities cited in Note 37, 20 C. J. p. 255.

■■ It is to be noted in this connection that, while express authority (Rev. St. 1925, art. 3149) is given to the district court and the executive committee to unlock and unseal the ballot boxes and examine their contents, where fraud or illegality is charged, the language used is that the court or committee "may (do so) if in its opinion the ends of justice require it." This language confers the power expressly as an act of judicial discretion. Before exercising the power the committee or court must first determine whether the ends of justice require it. Not only, we think, did the trial court compel a discretionary act on the part of the committee, but it enforced the exercise of that discretion in a manner in which, had the court itself so acted, its action would not be reviewed by an appellate court, even where the power to review an abuse of discretion existed.

The judgment of the trial court is reversed, and the cause dismissed.

Reversed, and cause dismissed.