Short v. Davis.

---

HAROLD C. SHORT, *Appellant*, v. ROBERT E. DAVIS, *Appellee.*

No. 18,732.

SYLLABUS BY THE COURT.

ELECTIONS—*Contest*—*What Markings Invalidate a Ballot.* In a commissioner's district at the last general election all the ballots had voting squares placed to the right of the words "no nomination" wherever they occurred in the Republican, Democratic and Socialist columns. There were in these columns 120 voting squares, seven of which were opposite the quoted words. This error was made by the officer or officers preparing and printing the ballots. A number of electors in voting made cross marks in these squares erroneously placed upon the ballots. *Held*, that in the absence of any showing of fraud or fraudulent intention such ballots should be counted.

Appeal from Leavenworth district court.   Opinion filed June 7, 1913.   Affirmed.

*M. N. McNaughton,* and *Lucien Rutherford,* both of Leavenworth, for the appellant.

*A. E. Dempsey, W. W. Hooper,* and *L. Hawn,* all of Leavenworth, for the appellee.

The opinion of the court was delivered by

WEST, J.: On appeal from the decision of a contest court it was decided that Robert E. Davis was duly elected county commissioner by eleven majority over Harold C. Short, who appeals to this court. The agreed statement of facts on which the matter is presented here recites that at the last election, through an oversight of the printer or of the county clerk, a voting square was printed to the right of the words "no nomination" wherever these words occurred in the Republican, Democratic and Socialist columns, but not in the independent and blank columns; that some of the ballots cast for each of the parties hereto contained a cross mark in one or more of these squares, and that the district court counted all such ballots so marked except where objections were made thereto and sustained on other grounds; that eighty-six ballots contained a cross mark in these squares in one or more places on each of such ballots; that of such ballots fifty were counted for Davis, over the objection of Short, and thirty-six were counted for Short, over the objection of Davis; that "there were about sixty ballots which had been rejected and not counted by the election officers, and had been sealed up and returned by them in separate envelopes, upon which were printed the words 'Blank, void or objected to ballots.' These ballots were marked 'Void' on the backs thereof by the election officers, and there was nothing else on the ballots themselves to indicate why they were rejected by the election officers and no testimony was offered by

contestor upon that point"; that twenty of these were counted for Short, over the objection of Davis.

As Short had the benefit of these ballots and Davis was decided to have been elected by eleven majority, it is necessary to consider only the ballots on which were found cross marks in the squares after the words "no nomination." These present a situation for which we have not found a parallel in all the multitude of cases arising under the various so-called Australian ballot laws. The appellant, Short, insists that in order to decide in his favor we have only to follow the literal requirement of the statute, which provides that "Any ballot upon which there shall be found  .  .  .  any other mark than the cross-mark used for the purpose of voting,  .  .  .  shall be wholly void, and no vote thereon shall be counted." (Gen. Stat. 1909, § 3273.) Added to the inherent significance of this provision are decisions cited by counsel to the effect that "Any mark or distinguishing feature on the ballots which would enable a person other than the voter himself to identify the ballot, and find out how the elector had voted, was intended to be strictly prohibited." (*Boyd v. Mills,* 53 Kan. 594, 606, 37 Pac. 16.) This is followed by the suggestion that it would have been easy for persons so disposed to make arrangements whereby certain electors could identify the corrupt votes they had agreed to cast by placing cross marks in these squares on one or more of the tickets. We concede the force of all this, and fully realize that this and other courts have held strictly to the statutory requirements. But being now confronted with a situation heretofore unknown, we must examine into its cause and natural effect and determine whether or not the literal wording of the statute applies.

Notwithstanding the strictness of the law, it was held, in the Boyd case, that the voters should not lose their suffrage because in one district the ballots furnished were all on colored paper instead of white, one

of the principal reasons being that, as they were all colored, there was no better chance to identify a given vote than if they had all been white. In *Taylor v. Bleakley,* 55 Kan. 1, 39 Pac. 1045, holding that a ballot not marked as required should not be counted, it was reasoned that to rule otherwise would open the door to the private agreed marking of ballots, a thing plainly intended to be prohibited by the statute. The same purpose is manifest in the syllabus in *Parker v. Hughes,* 64 Kan. 216, 67 Pac. 637, and in the opinion it was said:

"It is the duty of the court to ascertain the intent of the voter, and, if it may fairly and reasonably deduce a motive consonant with honesty, rather than dishonesty, from his ballot, to count the same for the candidate of his choice, rather than to disfranchise him. A distinguishing mark, to warrant the rejection of the ballot, must be found to have been made for the purpose of identification." (p. 223.)

A still more flexible ruling was made in *Ogg v. Glover,* 72 Kan. 247, 83 Pac. 1039. In that case the local city party had by mass convention nominated a ticket which was printed without any party emblem; this was held not to invalidate the ballot, and it was said that the case fell within the spirit of the Boyd case (53 Kan. 594, 37 Pac. 16). As to the marking of the ballots, the effect of the decision was that slight departures from the literal requirements are not fatal where good faith on the part of the voter is apparent.

In *Peabody v. Burch,* 75 Kan. 543, 89 Pac. 1016, the rules and decisions were discussed and reviewed, and it was held that a refusal to count ballots could not be justified on the ground that the officer whose duty it was to prepare them had wrongfully printed thereon the ticket of a party which had forfeited its right to such representation. It was said:

"We are satisfied, however, that the legislature never intended that no ballot should under any circumstances

Short v. Davis.

be counted unless in its preparation every requirement of the statute had been fully met." (p. 549.)

Numerous decisions of other courts are cited which hold that placing upon a properly printed ballot a cross mark opposite the words "no nomination" renders it void, but none which predicates this result upon a mistake of the official who prepared the ballot.

A sample ticket is exhibited, which shows that in the Republican column, under the designations of district judge, representative and county surveyor, were the words "no nomination"; in the Democratic column the words occurred under the designation of probate judge and judge of the city court; in the Socialist column, under the designations of congressmen and judge of the city court, each followed by the usual voting square. Each of these columns contained forty voting squares, and of those placed opposite the words "no nomination" three were in the first column, two in the second and two in the third, so that in order for the voter to use one for identification purposes, in accordance with a previous bribery or corrupt agreement, it would be necessary to specify which one of the seven should be thus used. A glance at the ballot printed as it was shows that the average voter not paying strict attention to each name might readily by mistake put a cross mark in any of these squares, and indeed without close inspection it was almost inevitable that such squares, or some of them, would be so used, all without any preconcerted design or evil intention. It seems that the ballots used in the entire county were thus prepared, and it was no fault of the voters nor of the election officers, but only the fault of the officer or officers who prepared and printed the ballots. There is no showing that any one of the seven squares was apparently used more than another, and in fact there is nothing in the record to indicate that any actual fraud was either perpetrated or intended. Chapter 222 of the Laws of 1905 removed

these squares required by section 6 of chapter 177 of the Laws of 1901, possibly for the very purpose of avoiding confusion and mistake. Section 3261 of the General Statutes of 1909 (Laws 1905, ch. 222, § 1) expressly provides that no voting squares shall be placed after the words "no nomination," and it is quite natural that the voters should assume that the proper officers in preparing the ballots had done their duty and followed this plain statutory provision. The language of the statute already quoted is "any other mark than the cross-mark used for the purpose of voting." (Gen. Stat. 1909, § 3273.) Doubtless this language was to exclude any mark used for the purpose of identification merely. In the literal sense it could hardly be said that the electors using this ballot placed cross marks in any of the voting squares for any other than the purpose of voting, although that purpose was not accomplished by using the squares in question. But unless they used such squares for some other purpose, even the letter of the statute does not render their ballots void, and certainly its spirit could not have that effect.

The legislature itself has indicated an intention that literal accuracy is not always indispensable, by providing, in section 3138, that whenever it shall satisfactorily appear that any person has received the highest number of votes for any office "such person shall receive the certificate of election, notwithstanding the provisions of law may not have been fully complied with in noticing and conducting the election, so that the real will of the people may not be defeated by any informality of any officer."

In view of the foregoing considerations, it would seem manifestly unfair, not only to the voters, but to the candidate of their choice, to pronounce the sentence of legal death upon these ballots and utterly eliminate the will of such electors, plainly though not quite formally expressed, in determining the results of the gen-

eral election in their district. We do not believe the legislature intended such a result or that the principles of equity and fair dealing would justify it.

Exception is taken to the validity or sufficiency of the appeal taken in this case, but we see no lack of jurisdiction, either in the district court or in this court.

We think the matter was decided upon proper principles and the judgment is affirmed.