No. 18,825.

JOHN E. MATHEWSON, *Appellee*, V. JESSIE CAMPBELL, *Appellant*.

SYLLABUS BY THE COURT.

1. ELECTION CONTEST—*Defective Ballots—Identification Marks— Review.* In an appeal from the district court in a proceeding to contest an election, the result being determinable from the markings upon the face of the ballots, and where the questions are presented on the appeal without oral testimony and practically as they were presented in the trial court, the supreme court is required to determine what votes should have been counted and what should have been rejected substantially as it would have done if the same questions had been submitted to it in an original proceeding in quo warranto.

2. SAME — *Ballots — Certain Marks Not Identification Marks.* Certain official ballots delivered to the voters had printed thereon short horizontal marks in the middle of the squares at the right of the names of the candidates. Some of the voters completed cross marks by penciling a line across the printed horizontal mark, and as the defect resulted from the printing and preparation of the official ballot and there is nothing to show a fraudulent purpose it is held that the defect did not destroy the validity of the ballot.

3. SAME. The fact that voters wrote the name of "Theodore Roosevelt," which was the name of a candidate, in the blank column under the head of "Presidential Electors" and placed cross marks in the squares opposite did not, of itself, render the ballots invalid nor prevent the counting of the same in favor of the candidates for other offices whose names were legally marked upon the ballots.

40—91 KAN.

4. SAME. The changing of a ballot furnished to an absent voter,. and which had been printed and prepared for the district where he tendered his vote, in an effort to adapt it to the district in which he resided and where the vote was to be canvassed and counted can not be regarded as a distinguishing mark, nor will such change, of itself, render the ballot invalid. .

Appeal from Brown district court; WILLIAM I. STUART, judge. Opinion filed February 7, 1914. Reversed.

*W. F. Means*, and *Sample F. Newlon*, both of Hiawatha, for the appellant.

*F. M. Pearl*, of Hiawatha, for the appellee; *A. M. Harvey*, of Topeka, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: This proceeding involves the title to the office of county clerk of Brown county. At the general election in 1912 Jessie Campbell and John E. Mathewson were candidates for that office. According to a canvass of the votes Jessie Campbell received 2349 votes as against 2331 received by John E. Mathewson, and the certificate of election was therefore issued to her. A contest was instituted by Mathewson, and the contest court found that he had received 2314 while Campbell had received but 2312 votes, and he was declared to have been legally elected. While all the ballots cast were examined by the contest court, the validity of but one hundred and twenty-two of them was actually in dispute. Of the challenged ballots twelve were counted for each of the contending parties, thirty-four which had been cast in favor of Mathewson were deemed to be invalid and were not counted, and sixty-four of them that were cast in favor of Campbell were held to be illegal in some particular and were rejected. She appealed from the decision and findings of the contest court, and on the appeal the challenged ballots were examined by the district court, and that tri-

bunal found that nine of them were legal ballots which should be counted for Mathewson, and that nine of them were legal ballots in favor of Campbell. The remaining one hundred and four ballots, thirty-six of which had been cast for Mathewson and sixty-eight for Campbell, were found to be illegal, and were accordingly rejected. The result as declared was that Mathewson had received a total of 2311 votes and Campbell 2309.

The decision of the district court has been brought here for review, and it is contended that the findings of that court, based on evidence as to distinguishing marks and defects in the ballots, should be regarded as settling the questions of fact. It is conceded that an appeal is given by statute, and on the appeal the challenged ballots are presented here in the same form that they were presented in the district court. This court can no more rest its decision on the findings of the trial court, nor escape the responsibility of determining the validity of the challenged ballots, than if the contest for the office had been brought in this court in an original proceeding in quo warranto. The decision of that court is, of course, entitled to consideration, but, as has been frequently decided, where the case comes before this court on written or documentary evidence practically as it was presented in the district court, this court must decide for itself what the facts establish, substantially as it would if the case was original in this court. (*Moore v. Pye,* 10 Kan. 246; *Robinson v. Melvin,* 14 Kan. 484; *Durham v. C. C. & M. Co.,* 22 Kan. 232; *Bank v. McIntosh,* 72 Kan. 603, 84 Pac. 535; *Belknap v. Sleeth,* 77 Kan. 164, 93 Pac. 580.)

In this case there was no oral evidence, and none that was conflicting. The legality of each ballot is to be determined solely by the markings on its face, and all that are in question are presented here just as they were in the district court. The contested ballots fall

into few classes, and not all of these require consideration.

The first that will be considered is a class consisting of eight ballots, in which the cross marks had been made in squares by penciling one line across a mark which the printer had made in printing the ballot. In some unexplained way the printer had made a short horizontal mark in the center of the squares in a number of ballots, thus, $\boxed{-}$ . These were sent out and delivered to the voters as valid ballots, and in marking the ballots some of the voters made a perpendicular mark with a lead pencil across the printed mark, thus, $\boxed{+}$ . Seven of these votes were in favor of appellant Campbell and one in favor of Mathewson. This defect resulted from the form of the official ballot delivered to the voters, and might be called an invited defect. The voter is not responsible for the form of the ballot, nor for the mistakes made in its preparation. He knows of the statute which provides that no ballot shall be delivered to voters except those printed and indorsed as the law requires, and he naturally accepts without question those that are delivered to him with official authentication. He should not lose his vote where he, in good faith, marks and casts his official ballot merely because of an irregularity in the printing of it. It has been held that not every departure from the prescribed forms operates to destroy a ballot, and that slight errors of the officers in the preparation and printing of the ballots which are furnished voters will not invalidate an election or a ballot otherwise legal. It was held that the voting of ballots printed on colored paper and delivered to the voters by the officers did not destroy the validity of the ballots, although the statute expressly provided that they should be printed on white paper. (*Boyd v. Mills,* 53 Kan. 594, 37 Pac. 16, 25 L. R. A. 486, 42 Am. St. Rep. 306.) In another case it was decided that the printing and delivery to the

Mathewson v. Campbell.

voters of ballots without a party emblem, and where the voters placed a cross in the circle at the head of the ballot, they were not invalidated by the absence of the required party emblem. (*Ogg v. Glover,* 72 Kan. 247, 83 Pac. 1039.) Again, it was ruled that ballots could not be rejected because officers whose duty it was to prepare them disregarded a mandatory provision of the law by printing thereon a ticket of a political party that was not entitled to a place on the ballot. (*Peabody v. Burch,* 75 Kan. 543, 89 Pac. 1016.) Another case of this character is where an officer erroneously printed squares on the ballots at the end of the words, "No Nomination." In placing crosses in the squares as they marked down the ticket some of the voters placed crosses in the squares opposite the words "No Nomination," and it was held that in the absence of a showing of fraudulent intention the ballots should be counted. (*Short v. Davis,* 90 Kan. 147, 132 Pac. 1172.) Other authorities of like purport are: *Stackpole v. Hallahan,* 16 Mont. 40, 40 Pac. 80, 28 L. R. A. 502; *Blackmer v. Hildreth,* 181 Mass. 29, 63 N. E. 14; *Earl v. Lewis,* 28 Utah, 116, 77 Pac. 235; *Schuler v. Hogan,* 168 Ill. 369, 48 N. E. 195; *State of Iowa v. Bernholtz et al.,* 106 Iowa, 157, 76 N. W. 662; 15 Cyc. 352. The ballots in question come within the rule of these authorities. The voter found one line of the cross mark within the square and, naturally enough, completed the cross by making a line across the printed line. He had some reason to fear that if he made a third line within the square it might be regarded as a distinguishing mark which would invalidate the ballot. Evidently it was not done to identify the ballots or for any fraudulent purpose, and, the effect being the result of the irregular printing and preparation of the ballots, they should be counted.

Two ballots that were cast in favor of appellant were rejected because the name of "Theodore Roosevelt" had been written by the voters within the space in the

blank column left for the names of presidential elec-
tors. The statute provides for a blank column on the
ballot within which voters not satisfied with the candi-
dates whose names are printed on the ballot may write
the names of persons for whom they desire to vote.
Under this statute the voters in question were entitled
to write the name of any person in the blank column
for presidential electors. While the name written is
the same as that of a candidate for president it can
not be assumed that there was no one of that name
within the state for whom the voters desired to cast
their votes. In California it was held that: "A ballot
on which the voter wrote the name 'William McKinley'
in the blank column under the title 'Presidential Elec-
tors,' bears a legal mark in a legal place and should be
counted. The court can not take judicial notice that
there was no person of that name in the state of Cali-
fornia eligible to the office of presidential elector."
(*Patterson v. Hanley,* 136 Cal. 265, syl. ¶ 4, 68 Pac. 821.)
Here the voters had placed a cross mark in the circle
at the head of the Republican column of each of the
ballots and had also written names in the blank col-
umn, thus voting for two persons for the same office.
Under the law the vote could not be counted for either
candidate for presidential elector, but it did not de-
stroy the legality of the ballot as to the other candidates
on the ballot for whom the votes were legally cast. It
is provided that: "Whenever a cross ✕ mark shall be
made in the square at the right of the name of more
than one candidate for the same office, such vote shall
not invalidate the ballot, nor shall the same be counted
for any such candidate." (Gen. Stat. 1909, § 3270.)
The appellant was entitled to have these votes counted
in her favor.

In one case an absent voter cast his vote in a sena-
torial and also in a congressional district in which he
did not reside. A ballot printed for the second con-

gressional district was delivered to him and he struck out the designation "2nd" and substituted the designation "1st," and he crossed out the word "Sixth" which designated the senatorial district and the one in which he did not reside. This ballot was cast in favor of appellant and should have been counted for her. These changes were made to make the ballot furnished to him applicable to the needs of the voter and to adapt it to the district in which it was to be counted. He was authorized to apply to the election board for a ballot and of necessity was given one prepared for the district in which he voted. Changes were necessary to adapt it to the district in which the absent voter resided. The changes in question were made to that end and not for identification or other wrongful purpose. Besides, absolute secrecy is impossible in the case of an absent voter as he is required to make an affidavit setting forth his identity, residence, right to vote in his own township or ward, and showing that he was unavoidably absent from his home. This affidavit is sealed up with the ballot which he casts and transmitted with it to the county clerk of his home county where it is opened and canvassed by the county commissioners in the presence of the county clerk. These officers necessarily know how the votes of absentees have been cast, but they are admonished by law to keep the contents of the ballot secret and not divulge to any one for whom the votes were cast. (Laws 1901, ch. 180, Gen. Stat. 1909, §§ 3312-3318; Laws 1911, ch. 181.) This vote was legal and should have been counted in favor of appellant.

A number of ballots were properly rejected because of markings which fell within the express prohibition of the statute and the condemnation of the court in prior decisions. For instance, a number were marked with a purple-colored pencil. On some marks and figures were placed outside of the squares and on the

margin of the ballots. A number of them were where the voter had made more lines than were necessary to make a cross mark, and still others had peculiar markings not at all like the cross mark prescribed by statute. Names were written on ballots with no cross marks in the squares opposite the names so written. A number of votes were of a class found among the ballots marked "Blank, void and objected to ballots" and from which the corners were not clipped. None of them can be regarded as legal ballots. (Gen. Stat. 1909, § 3270; *Wheeler v. Caldwell,* 68 Kan. 776, 74 Pac. 1031; *Ogg v. Glover,* 72 Kan. 247, 83 Pac. 1039.)

A number of votes were rejected about the legality of which there is considerable doubt and the validity of them has not been determined because of the fact that they were in favor of the appellant and the counting of them would not affect the result of the election.

On the record presented it appears that of the contested ballots Jessie Campbell should receive ten, making the whole number of legal ballots received by her to be 2319, and that 2312 ballots were received by appellee, John E. Mathewson. It therefore appears that Jessie Campbell received a majority of seven votes and was duly elected as county clerk of Brown county. The judgment of the district court will be reversed with directions to enter judgment in favor of Jessie Campbell.