The opinion of the court was delivered by
Smith, J.:
This was an election contest. The contest court decided against the contester. This decision was upheld by the four district judges of Sedgwick county, sitting en banc. The contester appeals.
John Free and John Wood ran against each other for county attorney. There were about 57,000 votes cast. Wood was declared to have received 17 votes majority.
*940 • A statement of intention to contest the election of Wood was filed by Free. This notice charged errors, irregularities and mistakes on the part of the canvassing board; that in the ninth precinct of the ■third'ward a member of the election board counted about 100 ballots without any other member of the board seeing these ballots; that the result of this count was returned to the county clerk and that such returns were irregular and unlawful; that there were errors, mistakes and irregularities in the third precinct in the township of Ketchi and that the county clerk and county commissioner refused to count 52 absentee ballots that should have been counted. The notice alleged that these irregularities, mistakes and errors gave John Wood a plurality of seventeen votes, and that should they be corrected the result of the election would be changed.
When the case came on to be heard before the contest court the evidence was confined to the complaint about the ninth precinct of the third ward. The evidence showed that there were two boards at this precinct — one being referred to as the receiving board and the other as the counting board. ■ The counting board started counting ■state ballots about ten o’clock on the morning of election day. ■ The receiving board started counting state ballots as soon as the polls closed.
About four o’clock in the morning on the day after election a member of the counting board took about eighty ballots and called them off to the other members of the counting board without ■any other members of the board seeing them. The evidence showed that the counting board called 206 votes for county attorney, of which Free received 75 votes — that is, about 36 per cent — while Wood received 131 votes. This is-the board where the ballots were counted with only one member of the board seeing them. The receiving board counted 474 ballots for county attorney, and out of these Free received 281 votes — -that is, about 59 per cent — and Wood received 193 votes.
.Evidence was also offered that the member of the counting board who called the ballots without any one else seeing them had been an active worker for Wood and that she had been heard to say that “we would be in an awful mess if the ninth of the third were counted.” This proffer of evidence was rejected.
Evidence was also introduced as to the ratio of the vote that was counted by the two boards for the office of district judge. It was as follows:
*941 "Per cent, Per cent, approx. approx.
NeSmith (D) ..................... 192 40 96 46
Sargent (R) ....................... 290 60 114 54
McCormick (D) .................. 199 41 91 44
Almond (R) ...................... 286 59 115 56
Pierpont (D) ..................... 309 67 125 61¿
Wightman (R) ................... 154 33 78 38¿”
It will be seen that the ratio of votes between the two boards for this office is about the same, while for the office of county attorney, as has been seen, there is a marked difference. After the sacks in which ballots were kept had been identified and the officer in charge of these had testified that they had been in his continuous custody and had not been tampered with the ballots were offered in evidence. The contestee objected to this offer on the ground that there had been no showing made to overcome the prima facie presumption of the correctness of the returns made by the canvassing board. The contest court sustained this objection. It held as follows:
“Wherefore, it is the ruling of the court that the demand for the recount of the ballots of the ninth precinct of the third ward has not been supported by testimony to show that any sufficient irregularity took place in the matter of the reception or tallying of these ballots to warrant a recount.
“That it is, in the Judgment of the court, a mere supposition that the ballots themselves will show a variance of count from the recorded result as termed by the judges of the election precinct and canvassed by the county commissioners.
“It is the further judgment of this contest court that it has no right to open this or any other individual ballot box on the mere asking without a proper basis therefor, and competent and sufficient evidence that a mistake, has occurred or an irregularity perpetrated either willfully or accidentally that would affect the result of the final count.”
The contester then offered the ballots of all the precincts in Sedgwick county. The introduction of these ballots was objected to and sustained on the same ground.
The contester then rested his case. The contestee then demurred to the evidence of contester on the ground that it failed to show any cause of action in favor of the contester, that the evidence was insufficient to show any mistake in the count, and for the further reason that the evidence did not show a probability that a recount of the ballots would decide the contest in favor of the contester. The contester also moved for judgment. The demurrer and motion for judgment were sustained and a motion for a new trial was denied.
The contester appealed to the district court. The four district *942 judges of the county seat sat en banc and heard the appeal. The contester argued before the district court and urges here that the district court could sit as a trial court and make new findings of fact and conclusions of law. However, since no new evidence was tendered in district court and the hearing there was on the record made before the contest court, that court properly treated the matter as though it were an appellate court.
The case then presents two questions, as follows: Was there sufficient evidence presented to overcome the prima facie presumption of the regularity of the return of the election officials; and must the contester first make a showing sufficient to overcome the presumption of correctness of the official returns in order to be entitled to have the ballots counted? We will notice the latter question first.
The contester bases his right to count the ballots on the provisions of R. S. 25-419. The particular part upon which he relies reads as follows:
“In all cases of contested elections, either of the parties contesting shall have the right to have such ballots opened and to have all errors of the judges in counting the ballots corrected by the court or body trying such contest.”
This section should be considered in connection with R. S. 25-1411, and in particular the first and sixth subdivisions thereof, as follows:
“The election of any person declared duly elected to any county office may be contested bj'f any elector of the county—
“First. For malconduct, fraud or corruption on the part of the judges of election in any township, or of any of the boards of canvassers, or on the part of any member of either of those boards.
“Sixth. For an3>' error or mistake in any of the boards of judges or canvassers in counting or declaring the result of the election, if the error or mistake would affect the result.”
The judges of the trial court filed written opinions in this case for which they gave their reasons for the decision reached. The opinion of one of'them, among other things, stated:
“A reading of the entire act shows that the intention of the legislature was to preserve by every safeguard possible the secrecy of the ballot, both before and after voting. An exception was made in contested elections, as under such law without the proviso quoted above the ballots could not be produced or inspected in a contest. We think it clear that the proviso simply created an exception, rather than the creation of absolute and unqualified rights to an examination of ballots in a contest matter.
“Another reason why we reach such conclusion is that to give the proviso the effect claimed for it by the appellant, would be to destroy most of the *943 provisions of the contest statute. This statute sets up the machinery for a contest, provides how it shall be commenced, the causes therefor, the creation of a special court, the hearing of the case, the determination of the issues, etc. (R. S. 1923, 25-1411 et seq.)
“If it had been intended to wipe out the causes for contest, the hearing thereon and a decision following such hearing it would have been easy enough for the legislature to have said so. It not having said so, the conclusion seems inevitable that the two statutes must be read together, and the causes must be proven before a recourse is had to the ballots; that the right exists only when preceded by proper proof. This conclusion is borne out by. the decision of our supreme court in Moorhead v. Arnold, 73 Kan. 132, which was decided after the statute was enacted. It was there held that there was not an absolute right to introduce the ballots, but that such right arose only after a proper preliminary foundation — in that case, proof that the ballots had not been tampered with.”
The rule is laid down in 20 C. J. 25'5, as follows:
“Since the ballots themselves, when their integrity has been established, are the best evidence of the result of an election, it is held by some authorities that in a statutory contest where error, mistake, fraud, misconduct or corruption in counting the ballots or declaring the result of an election is alleged, a recount of the ballots upon request of the complaining parties should be ordered as a matter of course. But a party has no right to demand a recount as a mere fishing excursion, and the better rule seems to be that a resort to the ballots cannot be had until the contestant produces evidence which indicates at least a probability that a recount would decide the election in his favor, that there were frauds, irregularities, or mistakes committed in the acceptance of the ballots and return of their count, or that there is error in the record declaring the result of the election; although the actual lawful result as disclosed by a recount will not be defeated by the fact that the recount is ordered before such proof is submitted.”
The majority of the court have reached the conclusion that the above rule from Corpus Juris is the better rule, and that this case is one where from the record it appears that the counting of the ballots would be a fishing expedition.
In Gray v. Huntley, 77 Colo. 478, the court held:
“A party to an election contest is not entitled, as a matter of right, to have ballot boxes opened and a recount made. Before such an order can be properly made there must be some preliminary evidence supporting the alleged charges, and then the matter is within the sound legal discretion of the trial court, the exercise of which is oi'dinarily held to be final on review.” (Syl. U 7.)
In Conaty v. Gardner, 75 Conn. 48, the court, in dealing with an election contest, said:
“The statute does not provide what facts must be proved, or what evidence *944 must be offered, before the judge to whom the petition is toought may direct a recount of the ballots to be made. Before ordering such recount he should be satisfied that the petitioner’s claim is made in good faith and upon reasonable grounds; but what evidence should be considered sufficient for that purpose is a matter resting largely in the judgment and discretion of the trial judge, and it will ordinarily not be reviewed upon an appeal to this court.’’ (p. 52.)
In State v. Smith, 144 So. 333, that court said:
“And so it is that in every instance where charges of irregularity of procedure or inaccuracy of returns have been made, and such charges have thereafter been properly put in issue by the respondents’ return to an alternative writ of mandamus, the court must find as a fact that a legal basis for ordering a recount exists, before ordering such recount.” (p. 336.)
In Pearson v. Norton, 63 N. H. 379, that court said:
“A recount for such a purpose would not be within the usual range of judicial action, and so wide a departure from the ordinary course of judicial duty cannot be fairly inferred as the legislative intent from anything less than a plain expression of that intent. A design to require the court, without any exercise of judgment upon any question of law or fact, to order a recount merely because it is desired by one of the candidates, is not plainly expressed in the statute, and cannot be reasonably held to be its meaning.” (p. 380.)
In. Ellwood City Boro’s Contested Election, 286 Pa. St. 257, the court held:
“Whether or not a ballot box will be opened is within the sound discretion of the court, .and the findings of fact by the court below must be accepted by the appellate court unless clear abuse of discretion be shown.” (Syl. ¶ 1.)
In the case of In re VanNoort, 85 Atl. 814, the court held:
“Where a petition for a recount of election returns was based upon a mere conjecture that the result might be in the applicant’s favor, and- it appeared equally probable, in view of a partial recount already had, that the result would be to the credit of the incumbent, the petition could not be allowed; the petitioner having no ‘reason to believe’ an error had been made ‘whereby the result of such election has been changed,’ as the quoted words are used in Election Act (2 Comp. St. 1910, p. 2125), sec. 159, authorizing a recount.” (Syl. f 5.)
To a similar effect are the holding's in Lueders v. Ehlinger, 31 S. W. 2d, 1099; also Quigley v. Phelps, 74 Wash. 73, 132 Pac. 738.
The majority of the court have examined the cases cited in the brief of the contester. We realize that there are some authorities which hold that a contester is entitled as a matter of right to have the ballots recounted. The conclusion has been reached that the better reasoned cases are those that have been cited and quoted *945 herein. The court has considered that which is well known to all who watch the progress of public affairs, that is, conditions have changed since the Australian ballot law was enacted. The number • of votes cast, the number of candidates for each office and the consequent work involved in making the count have increased tremendously. Not every slight deviation from the prescribed procedure will be regarded as sufficient to justify the contest court in opening the ballot boxes and recounting the ballots.
The contester urges that a sufficient showing was made to entitle contester to have the votes recounted. In answer to this, it may be said that this court is acting as an appellate court in this case. This is true also of the district court. Under the decisions it was the duty of the contest court to weigh the evidence to the end that it might decide whether there had been sufficient showing of irregularity as to make it probable that a recount of the ballots would change the result. At the outset the contester was met by the rule that the result of the count as officially announced was prima facie correct. The majority of the court have examined the record and are of the opinion that nothing was shown as to the ninth precinct of the third ward which would show that other than the correct result was reached in the count of the ballots of that precinct.
In the decision of the trial court one of the judges called attention to the fact that a Mrs. Brewer, one of the election officials, testified that no illegal vote was counted, no voter deprived of his right to vote and that, so far as she knew, the votes were properly called and tabulated. It was stipulated that the testimony of the other election officials would be the same as that of Mrs. Brewer. This testimony would tend to support rather than impeach the correctness of the count. The trial court and the majority of this court see in this testimony and stipulation some evidence that the person who is alleged to have counted the 100 votes with only herself seeing them would have testified to the same effect had she been called. It is thought that this is some affirmative evidence to sustain the finding of the contest court.
Contestee urges upon us the fact that as to the candidates for district judge the vote between the receiving board and the counting board did not vary while as to the office of the county attorney there was a wide variance between the two boards. This circumstance is not deemed of sufficient weight to justify a recount in view of the fact that the contest for county attorney was a vigorously fought *946 one. Everything was done that could be done to effect the result. A different class of people vote at certain hours of the day. The probable explanation of the way the votes ran is that the board that showed the great discrepancy counted a number of votes that happened to be cast by a group of voters who came into the polling place at the same time and for some reason voted for contestee rather than contester.
The judgment of the district court is affirmed.