No. 36,377

Harold N. Johnson, *Appellee,* v. Steve Russell, *Appellant.*

(159 P. 2d 480)

Opinion filed June 9, 1945.

*Douglas Hudson,* of Fort Scott, and *Bernard L. Sheridan,* of Paola, argued the cause, and *L. Perry Bishop* and *J. Milton Sullivant,* both of Paola, were on the briefs for the appellant.

*W. C. Jones,* of Olathe, argued the cause for the appellee.

The opinion of the court was delivered by

Hoch, J.: This is an election contest case involving the office of county commissioner in Miami county. A motion by the contestee for judgment on the pleadings was overruled and he appeals.

Upon the official canvass of votes cast at the general election in November, 1944, Steve Russell was declared elected commissioner in the second district by a majority of eleven votes over Harold N. Johnson. Johnson filed a statement of intention to contest the election, under the provisions of section 25-1415, G. S. 1935. Persons were named to constitute a contest court (G. S. 1935, 25-1413). The contestee then filed a motion for judgment upon the pleadings. The "Statement of Intention," hereinafter called the statement, was the only pleading that had been filed. The motion was overruled and appeal was taken to the district court. In the district court the contestor challenged the contestee's right to be heard on the ground that the order overruling a motion for judgment on the pleadings was not an appealable order. The district court denied the motion to dismiss and overruled the motion for judgment on the pleadings. This appeal followed.

Before considering the case on its merits we take note of appellee's contention, renewed here, that the order denying the motion for judgment on the pleadings is not an appealable order. The contention cannot be sustained. It was asserted in the motion that the statement showed upon its face that the contestor had no cause of action and that a right of contest, "if it ever existed," was barred by the statute of limitations. The motion was clearly tantamount to a demurrer. Treated as a demurrer a motion for judgment on the pleadings, of course, presents no issue of fact—it concedes all facts well pleaded by the adverse party. (*Smith v. Jones,* 145 Kan. 892, 893, 67 P. 2d 506; *Gas Service Co. v. Consolidated Gas Utilities Corp.,* 150 Kan. 715, 717, 96 P. 2d 608; *James v. Metropolitan Life Ins. Co.,* 155 Kan. 377, 381, 125 P. 2d 369; *Northington v. Northington,* 158 Kan. 641, 643, 139 P. 2d 622, and 'cases cited.) It follows that a ruling upon the motion, so considered, is appealable under the statute. (G. S. 1935, 60-3302 *Second.*)

Omitting formal averments the statement was as follows:

"6. That the particular causes of contest are as follows: That the Third Ward of Paola, Kansas, is located wholly within the Second County Commissioner District of Miami county, Kansas, and that at the General Election held on November 7, 1944, a total of 630 ballots were cast in said Third Ward.

"That of said 630 ballots cast in said Ward a total of only 579 for the office of County Commissioner, Second District, were counted and certified by the Election Officials of said Third Ward, of which contestor received 282 votes and contestee received 297 votes.

"That the majority of votes received by contestee for the office of County Commissioner, Second District, in said Third Ward, over contestor as certified

by the Election Board and as shown by the canvass of the Board of County Commissioners was fifteen (15), and that the total majority of votes received by contestee for said office throughout the entire Second County Commissioner District, as returned by the several election boards and as canvassed by the Board of County Commissioners, was eleven (11).

"That of the 630 ballots cast at the polls in said Third Ward at said election *forty-five (45) were absentee ballots upon which had been printed the candidates for office of County Commissioner in both the Second and Third Districts of Miami County, and in which cases the absentee voter had voted for one candidate for County Commissioner in each of said Second and Third Districts.*

"That because of said forty-five (45) votes being cast not only for a county commissioner in the Second District, but also for a county commissioner in the Third District, the *Election Board of said Third Ward declared said votes for County Commissioner void and rejected all of them, and none were counted. That the number of said votes so cast for the office of County Commissioner, Second District, which were rejected was sufficient mathematically to have changed the result of said election* in said Third Ward and in the Second County Commissioner District as a whole. *That all of said rejected votes were legal votes and should have been counted.* (Italics supplied.)

"That the names of the voters whose votes for County Commissioner, Second District, were so rejected, all of whom voted in 3rd Ward, Paola City, Miami County, Kansas, are as follows:" (forty-five names, here omitted.)

Appellant's first contention is that the statement does not state a cause of action for the reason that it contains no allegation that if the forty-five rejected votes had been counted the contestor would have been elected. Appellee does not argue here that it was not necessary to make such an allegation in order to comply with the pertinent provisions of the statute. He contends that under a fair interpretation of the statement he did allege that if the forty-five votes had been counted he would have been elected. The sentences in controversy, shown in the statement heretofore quoted, are:

"That the number of said votes so cast for the office of county commissioner, Second District, which were rejected was sufficient mathematically to have changed the result of said election in said Third Ward and in the Second County Commissioner District as a whole. That all of said rejected votes were legal votes and should have been counted."

It is well at this point to note the precise language of the statute. Section 25-1411, G. S. 1935, enumerates seven grounds upon which "the election of any person declared duly elected to any county office may be contested by any elector of the county." One of these grounds is:

"*Fifth.* When illegal votes have been received or legal votes rejected, at the polls, sufficient to change the result."

Section 25-1415, G. S. 1935, provides that the contestor shall file in the office of the county clerk his written statement reciting, *inter alia*, the "causes of contest." Except as to the alleged defect now considered, there is no contention that the provisions of the statute were not complied with.

Proceeding under paragraph "Fifth," *supra*, was it necessary for the contestor to allege that if the forty-five rejected votes had been counted he *would* have been elected, or was it sufficient to allege that they were sufficient in number that if counted they *could* change the election result? In view of appellee's construction of his statement and our conclusion presently to be stated we do not need to determine here that question of interpretation of the statute.

Although appellee does not contend that the statement contains any averment as to the number of votes he would have received out of the forty-five rejected votes; he does contend that the averment is, in effect, that he would have been elected if the forty-five votes had been counted. On the other hand, the appellant argues that the averment is merely that the mathematical result would have been changed (an obvious fact) if the forty-five votes had been counted. We agree with appellee's construction. Reasonably construed we think the contestor alleged that a count of the forty-five votes would show that he received enough of them to overcome the contestee's lead of eleven votes, thus resulting in his election. Furthermore, it is to be noted that there was no motion to make definite and certain, and in the absence of such a motion the pleading is entitled to a liberal construction. (*Fishburn v. International Harvester Co.*, 157 Kan. 43, 47, 138 P. 2d 471; *Downey v. Phillips*, 137 Kan. 362, 364, 20 P. 2d 453, and cases cited.)

Appellant's second contention is that the statement shows upon its face that the forty-five votes were lawfully rejected and that therefore no cause of action was stated. The contention is based primarily upon the theory that the forty-five absentees were in the military service and that the votes were rejected in compliance with a regulation promulgated by the secretary of state as authorized by G. S. 1943 Supp. 25-1225 (part of the 1943 statute relating to voting by absentees in the military forces in time of war, being sections 25-1214 *et seq.*, 1943 Supp.). Appellant also contends that the votes were properly rejected because the placing of a cross mark in the squares opposite the names of candidates in two commissioner districts constitutes an identifying mark which invali-

dated the ballot. Appellee apparently concedes that we may take judicial notice of the regulation issued by the secretary of state but disagrees with the construction placed upon it by appellant. He further contends that the markings do not constitute an identifying mark which invalidated the ballot.

Before considering these contentions on their merits it should be noted that the statement itself is silent as to the statute under which the ballots were prepared or the votes were cast. The allegation is simply that the forty-five "were absentee ballots upon which had been printed the candidates for office of county commissioner in both the second and third districts." We cannot say as a matter of law that the absentees were in the military service. They may have been civilians authorized to cast absentee ballots under other statutes. (G. S. 1943 Supp. 25-1101 *et seq.*) Nor can we say whether the ballots so printed were properly furnished to these particular absentee voters. We need only determine whether the rejection of votes upon ballots so printed and so marked was necessarily unlawful. Unless it was, the statement was sufficient, as against the motion.

It is not contended that the absentees were not qualified voters in the third ward, nor that they were not entitled to vote for commissioner in the second district. They were furnished a ballot upon which were printed not only the names of candidates in that district but also the candidates for commissioner in the third district for whom they were not entitled to vote. They voted for candidates in both districts. Did the cross mark which they placed after the name of a candidate in the third district constitute an identifying mark which required rejection of the entire ballot, under the statute? The governing statute is section 25-419 G. S. 1935, which deals broadly with the counting or rejection of ballots and other related subjects. Various grounds for rejecting ballots are set out. The pertinent provision is that a ballot shall be rejected "upon which there shall be found *any other mark than the cross mark used for the purpose of voting.*" (Italics supplied.)

*Short v. Davis*, 90 Kan. 147, 132 Pac. 1172, is directly in point. In that case, which also involved the office of county commissioner, those preparing the ballots had improperly placed a square after the words "no nomination" at various places where they occurred on the ballot and many voters had placed a cross mark in these squares. It was held that such marks did not constitute an identifying mark

invalidating the ballot under the provision above quoted, and that in the absence of any showing of fraud or fraudulent intent such ballots were properly counted. In the opinion it was said: "In the literal sense it could hardly be said that the electors using this ballot placed cross marks in any of the voting squares for any other than the purpose of voting, although that purpose was not accomplished by using the square in question." (p. 152.) There is certainly more reason, under the present situation, for holding that the ballots should be counted. If a voter who makes a mark in a printed square after the words *"no nomination"* does so for *"the purpose of voting,"* certainly one who makes a mark in a printed square *after the name of a candidate* does so for the "purpose of voting" in the absence of some indication to the contrary.

The decision in *Short v. Davis,* supra, has stood unquestioned for more than twenty-five years. Since that decision some changes have been made in the statute but the provision upon which it was based has not been changed. Such changes as have been made have had the effect of making the requirements less rigid (for history of changes made prior to 1925 see *Wall v. Pierpont,* 119 Kan. 420, 240 Pac. 251). One change, made in 1913, was to remove the restriction that only a pencil with black lead could be used. Another and important change, also made in 1913, was to add the following provision:

"No ballot shall be invalidated and thus thrown out because a cross within the square is not made with mathematical precision. The intent of the voter must be first considered, and if in the opinion of the judges the cross is not an identifying mark the ballot shall be counted." (G. S. 1935, 25-420.)

The general trend of these changes and of our decisions since *Short v. Davis,* supra, has been to emphasize the voter's intention and to count the ballot unless in the opinion of the judges the mark in question was intended as an identification mark. (*Mathewson v. Campbell,* 91 Kan. 625, 138 Pac. 637; *Wall v. Pierpont,* supra; *Boddington v. Schaible,* 134 Kan. 696, 8 P. 2d 314; *Hansen v. Lindley,* 152 Kan. 63, 77-80, 102 P. 2d 1058.) In the present case the fact that the squares in which the voters improperly made a cross mark were printed on the ballots, and the further fact that there were forty-five voters who made the same mistake strongly fortifies the view that the marks were not made for purposes of identification.

It is thus clear that it would have been improper to reject the whole ballot. The next question is whether all votes for commissioner upon ballots so marked should have been rejected. We find

nothing in the law which requires that result. Under the allegations the voters regularly marked their ballots for commissioner in the second district as they were entitled to do. Finding also printed on the ballot the names of candidates for commissioner in another district, they also marked a cross after candidates' names in that district. Of course they should have known in which district the third ward—their voting place—was located, and also that under our law they could not vote for commissioner in both districts. But we announce no startling fact when we say that however lamentable it may be, lack of such knowledge can hardly be said to be uncommon. Indeed, it would not stretch the doctrine very greatly to say that judicial notice is to be taken of the fact that many citizens frequently display similar lack of knowledge.

In view of our decisions construing the specific provisions of our own statutes on the subject there would be little point in reviewing the cases called to our attention from other jurisdictions based upon other statutes.

We conclude that under the general election law the votes properly marked for Johnson or for Russell should have been counted and the cross marks for candidates in the other district should have been treated simply as surplusage and disregarded. But appellant urges that the absentees whose votes were rejected were in the military service and that a regulation promulgated under the new (1943) soldier-voting law G. S. 1943 Supp. 25-1214 *et seq.*, required the rejection of all votes either for Johnson or Russell upon ballots which were also marked for candidates in the third district. In view of the fact that the statement does not disclose the fact that these forty-five absentee voters were in the military service it is perhaps not necessary to deal with that question. However, since it may be argued that we should assume that the ballots were printed in regular form and that only ballots going to absentee voters in the military service had printed thereon the names of candidates in more than one commissioner district, we will consider the question.

Section 25-1225, G. S. 1943 Supp., (being a part of the 1943 soldier-voting law) provides:

"The secretary of state is hereby authorized and empowered to make such rules and regulations as he may deem necessary to carry out the provisions of this act."

Both parties agree that prior to the 1944 election the secretary of

state promulgated the following regulation, a copy of which was sent to election boards:

"Whenever cross marks shall be made in the squares at the right of the names of candidates for state representative or county commissioner in more than one district such votes shall not invalidate the whole ballot but shall *invalidate those parts and those portions only and the same shall not be counted for any such candidates for said offices.*" (Italics supplied.)

As construed by appellant the regulation requires rejection of the votes for commissioner in the second district where the absentees resided, as well as in the third district in which they did not reside. Appellee construes the regulation as providing merely for rejection of the vote for candidates in the *other*—the third commissioner district. We are not much concerned as to the proper construction of the regulation, though appellant's construction seems the correct one. If appellee's construction is correct then the regulation added nothing to the general law. Obviously no one who resides in the second district is entitled to vote for commissioner in the third district. On the other hand, if the regulation means what appellant says it does we have no hesitancy in saying that it went beyond any power vested in the secretary of state. The purpose of the act was to provide methods and machinery for voting by absentee ballot by qualified voters in the military service. We do not question that the secretary of state was given broad powers in preparing the form of the ballot and in other such matters incident to the casting and counting of the ballots. But the law does not give him power to determine qualifications of voters or to make new law for the rejection of ballots. To hold otherwise would clothe him with power to rewrite fundamental provisions of our voting laws. Printing on the absentee soldier ballots the names of candidates in both commissioner districts may have been the only practicable thing to do, and as such well within the secretary's power. But to require rejection of the votes here at issue would deprive the voter of his rights under the law, would ignore his clear intention, and be wholly outside any power conferred upon the secretary of state. Needless to say no support to the contrary is to be found in G. S. 1935, 25-419, which reads:

"Whenever a cross X mark shall be made in the square at the right of the name of more than one candidate for the same office, such vote shall not invalidate the ballot, nor shall the same be counted for any such candidate."

In the present case two different offices—commissioner in the

second and the third districts—and not "the same office" are involved.

In further fortification of what has been said it is pertinent to note the last·clause of the recent soldier-ballot law, which reads:

"And the provisions of this act shall be construed liberally for the purpose of effectuating its purposes." (G. S. 1943 Supp. 25-1228.)

Appellant's construction of the regulation would not help effectuate the purpose of the act. It would tend to defeat it.

The judgment is affirmed.

Hoch, J. (dissenting in part): I dissent from that part of the court's opinion represented by syllabus 3 (a). Otherwise I concur in the opinion.

The court construes the contestor's Statement of Intention to allege that he would have been elected if the forty-five rejected votes had been counted. I cannot so read the allegation. The allegation was: "That the *number* of said votes so cast for the *office* of county commissioner, second district, which were rejected was *sufficient mathematically* to have changed the *result* of said election.*" I find no ambiguity in that allegation.

Note first that the contestor did not allege that the number of votes cast for *him* was sufficient to change the result of the election. He merely alleged that the *number* of rejected ballots cast for the *office* was *mathematically sufficient* to change the result of the election. Obviously it was. If the forty-five votes cast for the *office* had been counted and out of that number he had received as many as twelve more than the contestee he would have been elected, since the contestee's lead was only eleven without counting the forty-five votes. But in no way did he allege that out of the forty-five he would have received enough to overcome the contestee's lead of eleven. Neither directly nor by implication did he allege any knowledge as to how any of the forty-five voted. Indeed, in his statement before the contest board counsel for the contestor distinctly disavowed any such knowledge. What contestor said, and nothing more, was that forty-five votes cast for the office were rejected which should have been counted, that he was entitled to have them counted—as indeed he was—and that the forty-five votes were sufficient in number to change the election result. This is no technical construction. In my opinion the court's construction

reads into the plain words of the allegation a meaning which is not there.

Let me make it clear that I am not now discussing what sort of an allegation is sufficient under the contest statute—specifically G. S. 1935, 25-1411, *Fifth*. It might be argued that it is sufficient under the contest statute merely to allege that enough votes were unlawfully rejected—regardless of the candidate for whom they may have been marked—to change the result of the election. Under the court's construction of the statement it was not necessary to determine that question. If such an allegation would be sufficient then of course the statement as I construe it was good as against the motion. But appellee does not argue for such a construction of the contest statute and such a construction would, in my opinion, be wholly inconsistent with the decision in *Free v. Wood,* 137 Kan. 939, 22 P. 2d 978. That case involved the question of whether the contestor had made a sufficient preliminary showing before the contest board to entitle him to a recount. It was held that he had not done so, that it was necessary for the contestor to make such a showing as to render probable that a recount would change the result of the election. Many authorities were cited to support the proposition that in the absence of such a showing a "counting of the ballots would be a fishing expedition" not to be approved.

It is true that our issue here arises upon the sufficiency of the pleading and not upon the sufficiency of preliminary evidence. But certainly if upon the preliminary evidence the contestor must make a *prima facie* showing that a recount would change the election result it cannot logically be said that he is not required to make a corresponding allegation in the pleading under which such evidence is to be taken. Personally I would be willing to reëxamine the question involved in *Free v. Wood,* supra. I only say now that the allegation of the instant Statement is insufficient under the reasoning upon which the decision in that case was based.

WEDELL, J., concurs in the foregoing dissenting opinion.