No. 42,520

EMIL E. STAWITZ, *Appellee,* v. HARRY E. NELSON, *Appellant.*

(362 P. 2d 629)

Opinion filed June 10, 1961.

*Charles Rooney, Sr.,* of Topeka, argued the cause, and *Charles Rooney, Jr.,* of Topeka, was with him on the brief for the appellant.

*Arthur L. Claussen,* of Topeka, argued the cause, and *A. Harry Crane, Ward D. Martin* and *Harvey D. Ashworth,* all of Topeka, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: The question in this case is—who is legally entitled to the office of marshal of the Court of Topeka?

The facts are not in dispute.

At the November, 1958, general election one Marion T. Doss was elected to the office and assumed the duties thereof.

As a result of the August, 1960, primary election, Emil E. Stawitz was the Republican nominee for the office and Harry E. Nelson was the Democrat nominee.

Doss resigned as marshal effective September 10, 1960. Governor Docking appointed Nelson to fill the vacancy, the certificate of appointment reciting that it was "for the unexpired term." Nelson filed his oath and bond and took over the office.

Stawitz and Nelson—the latter being the incumbent by virtue of his appointment to succeed Doss—thus were opponents at the November, 1960, general election.

Of the 135 voting precincts in Shawnee county 115 are within the city of Topeka and the remaining 20 precincts are outside the city—in the so-called "rural areas."

Through error or inadvertence of the officials whose duty it was to prepare the ballots, the names of Stawitz and Nelson were omitted from the ballots furnished the 20 precincts outside the city of Topeka. Their names did appear, however, on the ballots furnished to the 115 precincts within the city.

The number of "rural voters" in the 20 precincts was in excess of 6,000.

Of the total votes cast in the 115 precincts within the city of Topeka for the office in question, Stawitz, the Republican nominee, received 24,457, and Nelson, the Democrat nominee, received 22,621—giving Stawitz a majority of 1,836.

Stawitz was declared elected and a "certificate of election" was issued to him by the proper authorities. He took the oath of office and filed his bond, which was approved.

Nelson also took the oath and filed his bond, which also was approved.

A dispute arose as to "who was marshal." Stawitz demanded the office—but Nelson refused to "surrender." Stawitz "moved in" anyway, and both he and Nelson—for a period at least—"performed duties" as marshal.

The board of county commissioners ruled that neither would be paid any salary "until a court of competent jurisdiction determines which of the parties is Marshal of the Court of Topeka."

Shortly thereafter Stawitz filed this action to determine the question.

The allegations of the petition, answer and reply need not be detailed. After hearing the matter on a stipulation of facts, as above related—and arguments of counsel—the trial court, on February 16, 1961, ruled that Stawitz was "entitled to hold the office of Marshal of the Court of Topeka from January 9, 1961, and for the term of said office as fixed by statute," and that Nelson had no right or title to the office and should be excluded, ousted and removed therefrom.

(G. S. 1949, 25-313, provides that except as otherwise provided by law, the regular term of office of all state, district, county and township officers shall begin on the second Monday in January next after the election. January 9 was the "second Monday in January" following the 1960 general election.)

Nelson has appealed.

Rather than referring to the parties as plaintiff and defendant, or appellee and appellant, we will throughout this opinion refer to Stawitz, the Republican nominee for the office, and to Nelson, the Democrat nominee, by name.

The court of Topeka was created by the legislature in 1899, and reference is made to two sections of the original act appearing in the Revised Statutes of 1923.

20-1930 provided:

"The term of office of the judge, clerk and marshal of said court shall be two years, and until their successors are duly elected and qualified, and the first election of such judge, clerk and marshal shall be held at the *regular election of city officers of said city of Topeka* in the year 1899." (Emphasis supplied.)

20-1931 provided:

"All vacancies in the office of judge, clerk or marshal of said court shall be filled by appointment of the governor *until the next election of city officers* occurring more than thirty days after such appointment." (Emphasis supplied.)

In 1929, R. S. 1923, 20-1930, above quoted, was amended to read as follows, and we quote from G. S. 1935, 20-1930:

"The term of office of the judge, clerk and marshal of said court shall be two years, and until their successors are duly elected and qualified, and the election of such judge, clerk and marshal shall be held at the *regular county general election.*" (Emphasis supplied.)

In 1945 the section was again amended, and as it now appears at G. S. 1949, 20-1930, reads:

"The term of office of the judge, clerk and marshal of said court shall be two years, and until their successors are duly elected and qualified, and the election of such judge, clerk and marshal shall be held at the regular county general election, *and all qualified electors of the county shall be entitled to vote for such officers.*" (Emphasis supplied.)

Throughout the years, however, R. S. 1923, 20-1931, above quoted, has remained unchanged and appears as G. S. 1949, 20-1931.

Literally speaking, therefore, G. S. 1949, 20-1930, provides that the term of office of the marshal of the Court of Topeka shall be for two years and until his successor is duly elected and qualified; that the election of such marshal shall be held at the *regular county general election, and that all qualified electors of the county shall be entitled to vote for such official,* whereas G. S. 1949, 20-1931, provides that a vacancy in the office of marshal shall be filled by appointment of the governor until the *next election of city officers* occurring more than thirty days after such appointment. The inconsistency and

conflict between the two sections is obvious, for only those residing within the city of Topeka vote at the city election, which, under G. S. 1949, 13-1702, is held on the first Tuesday in April of each odd-numbered year. As suggested by counsel—the failure of the legislature also to amend 20-1931, above, must have been the result of mistake, inadvertence or oversight. In any event, it seems clear that through the enactment of other provisions, both of a general nature and those pertaining to the Court of Topeka, the section (20-1931) must be considered to have been repealed by implication.

In his letter of transmittal appointing Nelson to succeed Doss, resigned, the governor stated that he was acting under the authority of G. S. 1949, 20-1427. Obviously this was in error, for that section deals with vacancies in city courts in cities of under 18,000 population, which does not include Topeka. The parties agree, however, that the governor was authorized to fill the vacancy under G. S. 1959 Supp. 25-312, which in pertinent part reads:

"All vacancies in any state or county office, unless otherwise provided for by law, shall be filled by appointment from the governor, until the next general election after such vacancy occurs, when such vacancy shall be filled by election. . . ."

and that the erroneous reference to G. S. 1949, 20-1427, is immaterial.

In support of the trial court's judgment that Stawitz is entitled to the office, mention is made of the fact that Nelson failed to contest the election within twenty days after the votes were canvassed, as provided by G. S. 1949, 25-1415. Reference to G. S. 1949, 25-1411, however, setting forth the grounds for contest of an election to a county office, discloses that none of the statutory grounds has application to the facts of this case.

Mention also is made of the fact that a "certificate of election" was issued to Stawitz. The performance of this purely "ministerial" act, however, was in no sense determinative or conclusive, and we regard the matter as being of no consequence on the question presented.

It also is urged that Nelson, having failed to take advantage of the provision found in G. S. 1949, 25-604, pertaining to the right of inspection of "sample ballots" by candidates and their agents during the five-day period preceding the election—is now estopped from complaining of the irregularity with respect to the omission of his name from the ballots in the 20 outlying precincts. In our opinion—

as applied to the facts of this case—this contention is without substantial merit and cannot be sustained.

As previously mentioned, G. S. 1959 Supp. 25-312, above, states that all vacancies in any state or county office, unless otherwise provided for by law, shall be filled by appointment from the governor *until the next general election* after such vacancy occurs, *when such vacancy shall be filled by election.*

G. S. 1949, 25-314, reads:

"Any of said officers that may be elected or appointed to fill vacancies may qualify and enter upon the duties of their office immediately thereafter, and when elected they may hold the same during the unexpired term for which they were elected, and until their successors are elected and qualified; *but if appointed, they shall hold the same only until their successors are elected and qualified.*" (Emphasis supplied.)

During the fall of 1960 Nelson was holding the office of marshal by appointment "until the next general election"—at which election the vacancy was to be filled. Being an appointee he was entitled to hold the office only *until his successor was elected and qualified.* The decisive point in this case, therefore, narrows down to the question whether Stawitz was "elected" at the general election. In other words, may it be said—as between Stawitz and Nelson—there was a legal election for the office of marshal?

G. S. 1949, 25-702, provides:

"In all elections for the choice of any officer, unless it is otherwise expressly provided, the person having the highest number of votes for any office shall be deemed to have been elected to that office; and whenever it shall satisfactorily appear that any person has received the highest number of votes for any office, such person shall receive the certificate of election, notwithstanding the provisions of law may not have been fully complied with in noticing and conducting the election, so that the real will of the people may not be defeated by any informality of any officer."

Counsel for Stawitz call attention to the fact that 47,078 voters (within the city of Topeka) cast their ballots for the office of marshal and expressed their preference for Stawitz by giving him a majority of 1,836 votes; that an analysis of the election results in the 20 precincts in question shows a positive and definite "trend" in favor of Republican candidates for other offices—national, state and local; that of the 65 "write-in" votes for the office of marshal in the 20 precincts Stawitz received 40 and Nelson 25—all of which, it is contended, raise the presumption that had the some 6,000 voters in those 20 precincts voted for the office of marshal Stawitz would have received a majority of them, and that in no event can it be said

a presumption arises that Nelson would have received a sufficient number of them to offset and overcome the majority obtained by Stawitz in the other 115 precincts.

(In passing, it is to be noted that in the 20 precincts in question Democrat nominees for the office of judge of the district court [second division], attorney general and sheriff defeated their Republican opponents, their majorities being 34, 343 and 1,237, respectively.)

Counsel for Stawitz contend that under the broad language of G. S. 1949, 25-702, above quoted, "the real will of the people," evidenced by his majority of 1,836, should not be thwarted by the fact his and Nelson's names were omitted from the ballots in the 20 precincts because of an error on the part of those officials whose duty it was to prepare them, and we are cited to *Ogg v. Glover,* 72 Kan. 247, 83 Pac. 1039; *Peabody v. Burch,* 75 Kan. 543, 89 Pac. 1016, 12 Ann. Cas. 719, and *Short v. Davis,* 90 Kan. 147, 132 Pac. 1172. Reference to those cases, however, discloses such factual dissimilarities to the one before us that they are of no help on the question presented.

We have no question concerning the counting of alleged illegal ballots, the refusal to count alleged legal ballots, or the granting or refusal of permission to persons presenting themselves, to vote, and therefore that line of cases arising out of election disputes holding that the burden is upon the objector to make a showing that the result of the election would have been different in the event of a recount, or the like (*Tarbox v. Sughrue,* 36 Kan. 225, 12 Pac. 935; *Free v. Wood,* 137 Kan. 939, 22 P. 2d 978; *Johnson v. Russell,* 160 Kan. 91, 159 P. 2d 480; *State, ex rel., v. Lane Rural High School District,* 173 Kan. 1, 243 P. 2d 232; *Olson v. Fleming,* 174 Kan. 177, 254 P. 2d 335; *Bishop v. Sewer District No. 1,* 184 Kan. 376, 382, 336 P. 2d 815), also is inapplicable.

Despite the broad and sweeping provisions of G. S. 1949, 25-702, above quoted, we are of the opinion that under the facts of this case we are not warranted in holding that the statute compels the conclusion that Stawitz was legally elected and therefore entitled to the certificate of election. Further, we feel that we are not permitted to indulge in the presumption that Stawitz would still have received a majority of all votes cast had the some 6,000 voters in the 20 precincts been given the opportunity to vote for the office of marshal. In cases of this nature, involving election disputes, *courts simply should not indulge in presumptions,* for to do so would be to open wide the door to fraud and place it within the power of unscrupulous

election officials to influence or control election results. No fraud or intentional wrongdoing is charged here, but the fact remains that a far greater number of persons were "disfranchised," so to speak, than the majority received by Stawitz. This is not a case such as where their names were omitted from ballots furnished to only one precinct, for example, in which the total number of voters was less than the majority received by Stawitz elsewhere—in which event the result could not have been changed.

Our conclusion is, therefore, that insofar as the office of marshal of the Court of Topeka is concerned—the election was void. At the time—Nelson was holding the office by appointment "until the next general election . . . when such vacancy shall be filled by election." (G. S. 1959 Supp. 25-312, above.) As such appointee, he was entitled to hold the office *until his successor was elected and qualified* (G. S. 1949, 25-314, above). The election—as to the office of marshal, being void—*no one was elected.* No successor having been elected, it follows, therefore, that Nelson was, and is, entitled to the office until such time as his successor is elected and qualified.

As stated earlier in this opinion, we are told that for a time at least, both Stawitz and Nelson "performed duties" as marshal. We are not advised as to whether the same has been the case following the trial court's decision of February 16, 1961, holding that Stawitz was entitled to the office. Be that as it may, and so as to remove all doubt and uncertainty concerning the matter, both Stawitz and Nelson are deemed and held to have been *de facto* marshals, and no acts done by either of them "in the performance of the duties of the office" are to be construed as being invalid because of our decision in this case.

The judgment is reversed.